# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

_____
)
UNITED STATES OF AMERICA *ex rel.*    )
LAURA LAPORTE, ANGELA DAVENPORT,    ) Civil Action No.:
PAMELA HONE, ROBERT BIASELLI,    ) 1:11-CV-03523(RBK)(AMD)
KELLI J. AMAYA, AMANDA KENNY, and    )
DORIS MOODY,    )
    )
               *Plaintiffs*,    )
       v.    ) **ORAL ARGUMENT IS**
    ) **REQUESTED**
    )
PREMIER EDUCATION GROUP, L.P. and    )
PREMIER EDUCATION GROUP, G.P., INC.    )
d/b/a HARRIS SCHOOL OF BUSINESS,    ) **[Filed Electronically]**
BRANFORD HALL CAREER INSTITUTE,    )
SALTER COLLEGE, THE SALTER SCHOOL,    ) **Motion Day:**
SEACOAST CAREER SCHOOLS, SUBURBAN    ) **Monday, April 21, 2014**
TECHNICAL SCHOOL; and JOHN DOES    )
NOS. 1-50, FICTITIOUS NAMES,    )
    )
               *Defendants*.    )
_____)


## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE FOURTH AMENDED COMPLAINT


**MELTZER, LIPPE, GOLDSTEIN & BREITSTONE, LLP**
**190 Willis Avenue**
**Mineola, New York 11501**
**(516) 747-0300**

*Attorneys for Defendants*

## <u>TABLE OF CONTENTS</u>

<u>PAGE</u>

TABLE OF AUTHORITIES ................................................................................. iii

PRELIMINARY STATEMENT & SUMMARY OF ARGUMENT .......................1

ARGUMENT .....................................................................................................7

I.   THE ACTION MUST BE DISMISSED FOR WANT OF
     JURISDICTION PURSUANT TO THE "FIRST-TO-FILE RULE"
     AND DUE TO PRIOR PUBLIC DISCLOSURES OF THE
     ALLEGED WRONGS. ...............................................................................7

  A.  The Court Lacks Jurisdiction Pursuant to the "First-to-File Rule." .............7

  B.  Prior Public Disclosures Mandate Dismissal of the Action. ......................11

II.  RELATORS' CLAIMS ARE BARRED BY APPLICABLE
     STATUTES OF LIMITATIONS...............................................................15

III. THE ACTION MUST BE DISMISSED FOR FAILURE TO
     PROPERLY PLEAD PURSUANT TO RULE 8 AND TO PLEAD
     FRAUD WITH PARTICULARITY PURSUANT TO RULE 9(b). ..........16

  A.  The Action Should be Dismissed Because the PPA Violations Have
      Not Been Pleaded with the Requisite Particularity.....................................17

    1.  Allegations that Defendants Caused Financial Aid to be Awarded to
        Ineligible Students Are Not Pleaded with Particularity. ........................17

    2.  Allegations that Defendants Used High-Pressure Tactics to Enroll
        Students Under False Pretenses are Not Pleaded With Particularity. .....21

    3.  Allegations that Defendants Made Material Misrepresentations to
        Induce Students to Enroll in Their Institutions Are Not Pleaded
        with Particularity. ....................................................................................22

    4.  Allegations That Defendants Used Prohibited Incentive Compensation
        for Employees Are Not Pleaded with Particularity.................................23

  B.  The Action Should At Least be Limited to Those Campuses Where
      Misconduct is Alleged to Have Taken Place.............................................25

647440-6

IV.   THE FALSE CERTIFICATION CLAIMS (COUNTS I AND II)
      MUST BE DISMISSED FOR FAILURE TO STATE A CLAIM
      PURSUANT TO RULE 12(b)(6). ...........................................................28

   A. No FCA Claim Can Be Stated Without a Regulatory Violation and
      Relators Fail to Allege Such Violations. ....................................................31

   B. Dismissal is Required of the FCA Claims That Lack a Condition of
      Payment Predicate. .......................................................................................39

V.    RELATORS' REVERSE FALSE CERTIFICATION CLAIM
      (COUNT IV) MUST BE DISMISSED PURSUANT TO
      RULE 12(b)(6). .............................................................................................47

VI.   RELATORS' FCA CONSPIRACY CLAIM (COUNT III) MUST BE
      DISMISSED PURSUANT TO RULES 9(b) AND 12(b)(6). ....................49

VII.  RELATORS' FCA RETALIATION CLAIMS (COUNTS V
      AND VII) MUST BE DISMISSED PURSUANT TO RULES 9(b)
      AND 12(b)(6). ................................................................................................51

VIII. THE CLAIMS OF RELATORS AMAYA AND MOODY FOR
      INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
      (COUNTS VI AND VIII) FAIL TO STATE A CLAIM FOR
      WHICH RELIEF MAY BE GRANTED. ....................................................53

CONCLUSION .......................................................................................................55

647440-6

<u>**TABLE OF AUTHORITIES**</u>

<u>**Page(s)**</u>

<u>**Cases**</u>

<u>Ashcroft v. Iqbal</u>, 556 U.S. 662 (2009) ............................................................ 28, 40

<u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544 (2007) ...................................................28

<u>Campion v. Ne. Util.</u>, 598 F. Supp. 2d 638 (M.D. Pa. 2009) ........................... 52, 53

<u>CSX Transp. Co. v. Novolog Bucks Cnty.</u>, 502 F.3d 247 (3d Cir. 2007)..............47

<u>E.E.O.C. v. Avecia Inc.</u>, Civ.A. 03–320–SLR,
   2003 WL 22432911 (D. Del. Oct. 23, 2003)........................................... 15, 53, 54

<u>Gould Electronics Inc. v. U.S.</u>, 220 F.3d 169 (3d Cir. 2000) ...................................8

<u>Halasa v. ITT Educational Services, Inc.</u>, 10-cv-437 (WTL),
   2011 WL 4036516, (S.D. Ind. Sept. 12, 2011),
   <u>aff'd</u>, 690 F.3d 844 (7th Cir. 2012) .....................................................................35

<u>Hutchins v. Wilentz, Goldman & Spitzer</u>, 253 F.3d 176 (3d Cir. 2001).......... 51, 52

<u>In re Burlington Coat Factory Sec. Litig.</u>, 114 F.3d 1410 (3d Cir.1997) ...............20

<u>Jordan v. Delaware</u>, 433 F. Supp. 2d 433 (D. Del. 2006)........................... 53, 54, 55

<u>Mattern v. Hudson</u>, 532 A.2d 85 (Del. Super.1987).................................................53

<u>Mikes v. Straus</u>, 274 F.3d 687 (2d Cir. 2001) ................................................. 40, 47

<u>Semulka v. Moschell</u>, 401 F. App'x 628 (3d Cir. 2010) ........................................16

<u>Seville Indus. Mach. Corp. v. Southmost Mach. Corp.</u>,
   742 F.2d 786 (3d Cir. 1984) ...............................................................................27

<u>Tredennick v. Bone</u>, 323 F. App'x 103 (3d Cir. 2008) ..........................................26

<u>U.S. ex rel. Atkinson v. Pa. Shipbuilding Co.</u>, 473 F.3d 506 (3d Cir. 2007)............8

647440-6

U.S. ex rel. Bott v. Silicon Valley Colleges, 262 F. App'x 810
    (9th Cir. 2008) ..............................................................................34

U.S. ex rel. Clausen v. Lab. Corp. of Am., Inc.,
    290 F.3d 1301 (11th Cir. 2002) ......................................................19

U.S. ex rel. Conner v. Salina Reg'l Health Ctr., Inc.,
    543 F.3d 1211 (10th Cir. 2008) ........................................ 41, 42, 45, 47

U.S. ex rel. Diaz v. Kaplan University, 09–20756–CIV, 2011 WL
    3627285 (S.D. Fla. Aug. 17, 2011) ........................................... *passim*

U.S. ex rel. Gatsiopoulos v. Kaplan Career Inst., 09-21720-CIV,
    2010 WL 5392668 (S.D. Fla. Dec. 22, 2010) ....................................22

U.S. ex rel. Ge v. Takeda Pharm. Co. Ltd., 737 F.3d 116 (1st Cir. 2013) ..............19

U.S. ex rel. Harris v. Alan Ritchey, Inc., C00-2191Z, 2006 WL 3761339
    (W.D. Wash. Dec. 20, 2006) ...................................................... 26, 28

U.S. ex rel. Hobbs v. MedQuest Assocs. Inc.,
    711 F.3d 707 (6th Cir. 2013) ........................................... 40, 42, 45, 47

U.S. ex rel. Hoggett v. Univ. of Phoenix, 10-CV-02478-MCE,
    2012 WL 2681817 (E.D. Cal. July 6, 2012) ......................................24

U.S. ex rel. Knisely v. Cintas Corp., Inc., CIV.A. 10-1193,
    2014 WL 983468 (E.D. Pa. Mar. 14, 2014) ......................................18

U.S. ex rel. LaCorte v. SmithKline Beechman Clinical Labs., Inc.,
    351 F. App'x 778 (3d Cir. 2009)................................................ 7, 8, 9

U.S. ex rel. Lampkin v. Johnson & Johnson, Inc.,
    CIV.A. 08-05362 JAP, 2013 WL 2404238 (D.N.J. May 31, 2013) ...................50

U.S. ex rel. Lobel v. Express Scripts, Inc., 351 F. App'x 778 (3d Cir. 2009)........55

U.S. ex. rel. Lujan v. Hughes Aircraft Co., 243 F.3d 1181 (9th Cir. 2001)............11

iv

U.S. ex rel. Mailly v. Healthsouth Holdings, Inc., Civ. A. No. 07-2981,
Civ. A. No. 09-483, 2010 WL 149830 (D.N.J. Jan. 15, 2010) ............................7

U.S. ex rel. Nelson v. Sanford-Brown, Ltd., 12-CV-775-JPS, 2014
WL 1052944 (E.D. Wis. Mar. 17, 2014) ..................................................... 14, 15

U.S. ex rel. Piacentile v. Sanofi Synthelabo, Inc., Civ. 05-2927 (KSH),
2010 WL 5466043 (D.N.J. Dec. 30, 2010) ................................. 10, 11, 49, 50, 51

U.S. ex rel. Pilecki-Simko v. The Chubb Institute, Civ. A. No. 06-3562,
2010 WL 1076228 (D. N.J. Mar. 22, 2010) ("Chubb I").............................. passim

U.S. ex rel. Pilecki-Simko v. The Chubb Institute,
443 F. App'x 754 (3d Cir. 2011) ("Chubb II") ............................................. 17, 29

U.S. ex rel. Qazi v. Bushwick United Housing Development
Fund Corporation, 11-cv-1592 (BMC), 2013 WL 5607181
(E.D.N.Y. Oct. 14, 2013)......................................................................................47

U.S. ex rel. Quinn v. Omnicare, Inc, 382 F.3d 432 (3d Cir. 2004) .........................31

U.S. ex rel. Saldivar v. Fresenius Med. Care Holdings, Inc.,
906 F. Supp. 2d 1264 (N.D. Ga. 2012) ...............................................................26

U.S. ex rel. Schmidt v. Zimmer, Inc., 386 F.3d 235 (3d Cir. 2004).......................16

U.S. ex rel. Schmidt v. Zimmer, Inc., Civ. A. No. 00-1044,
2005 WL 1806502 (E.D. Pa. July 29, 2005) .......................................................19

U.S. ex rel. Simpson v. Bayer Corp., Civ. A. No. 05-3895 JLL,
2012 WL 3600302 (D.N.J. Aug. 21, 2012)............................................................7

U.S. ex rel. Sobek v. Educ. Mgmt., LLC, 2013 WL 2404082
(W.D. Pa. May 31, 2013) .............................................................................. passim

U.S. ex rel. Thomas v. Siemens AG, 708 F. Supp. 2d 505 (E.D. Pa. 2010) ..........48

U.S. ex rel. Torres v. Kaplan Higher Education Corp., 09-21733-CIV (PAS),
2011 WL 3704707 (S.D. Fla. Aug. 23, 2011).....................................................34

U.S. ex rel. Wall v. Vista Hospice Care, Inc.,
    778 F. Supp. 2d 709 (N.D. Tex. 2011) ....................................................26

U.S. ex rel. Washington v. Educ. Mgmt. Corp.,
    871 F. Supp. 2d 433 (W.D. Pa. 2012) ...................................................24

U.S. ex rel. Wilkins v. United Health Group, Inc.,
    659 F.3d 295 (3d Cir. 2011) ......................................................... *passim*

U.S. ex rel. Zizic v. Q2Administrators, LLC, 728 F.3d 228 (3d Cir. 2013) ...........11

United States v. The Baylor Univ. Med. Ctr., 469 F.3d 263 (2d Cir. 2006) ...........15

United States v. Warnings, CIV. A. 93-4541,
    1994 WL 396432 (E.D. Pa. July 26, 1994) ...........................................50

Yuhasz v. Brush Wellman, Inc., 341 F.3d 559 (6th Cir. 2003)...............................53

## Federal Statutes

20 U.S.C. § 1094(a)(20).................................................................. 23, 34

31 U.S.C. § 3729 ................................................................... *passim*

31 U.S.C. § 3729(a)(1)(A) ...............................................................28

31 U.S.C. § 3729(a)(1)(B) ...............................................................28

31 U.S.C. § 3729(a)(1)(G) ............................................................ 47, 48

31 U.S.C. § 3730(b)(5)................................................................ 4, 7, 8, 11

31 U.S.C. § 3730(e)(4)................................................................ 4, 11, 12, 15

31 U.S.C. § 3730(h) ................................................................. 15, 51, 52

31 U.S.C. § 3731(b)(1)..................................................................15

647440-6

## State Statutes

10 Del.C. § 8119 .......................................................................................15

Del. Code Ann. tit. 19, § 2304 (West) ........................................... 53, 54

Mass. Gen. Laws Ann. ch. 151B ................................................... 26, 27

Mass. Gen. Laws Ann. ch. 151C ...................................................26

## Federal Rules

Fed R. Civ. P. 8 ....................................................................................1, 16

Fed.R.Civ.P. 9(b) ............................................................................. *passim*

Fed. R. Civ. P. 12(b)(1) ................................................................ 1, 8, 10

Fed. R. Civ. P. 12(b)(6) ................................................................... *passim*

Fed. R. Civ. P. 12(f) ...........................................................................1

Fed. R. Civ. P. 15(c)(2) ....................................................................16

## Federal Regulations

34 C.F.R. § 104.3(j)(1)(i) ................................................................36

34 C.F.R. § 104.42(a)-(b) .................................................................36

34 C.F.R. § 668.14(b) ......................................................................32

34 C.F.R. § 668.14(b)(22)(ii)(E) ................................................ 23, 24, 34

34 C.F.R. § 668.16 ..................................................................... 45, 46

34 C.F.R. § 668.16(e) ................................................................. 38, 45, 46

34 C.F.R. § 668.22(b) ................................................................. 38, 39

34 C.F.R. § 668.32 ...................................................................................................20

34 C.F.R. § 668.32(e) ..............................................................................................20

34 C.F.R. § 668.32(e)(1) ................................................................................... 19, 20

34 C.F.R. § 668.32(e)(1)-(5) ....................................................................................20

34 C.F.R. § 668.32(f) ...............................................................................................38

34 C.F.R. § 668.34 ........................................................................................... 38, 46

34 C.F.R. § 668.34(a)(7) ..........................................................................................38

34 C.F.R. § 668.40(a) ..............................................................................................37

34 C.F.R. § 668.40(a)(1) ................................................................................... 36, 37

34 C.F.R. § 668.40(a)-(c) .........................................................................................37

34 C.F.R. § 668.75 ........................................................................................... 43, 45

34 C.F.R. § 668.75(a)-(c) .........................................................................................44

34 C.F.R. § 668.75(a) ..............................................................................................44

34 C.F.R. § 668.75(b) ..............................................................................................43

34 C.F.R. § 668.75(c) ..............................................................................................44

34 C.F.R. §§ 668.141-145 ........................................................................................32

45 C.F.R. § 80.3(a)-(b)(1) ........................................................................................36

45 C.F.R. Pt. 80, App. B(IV)(L) ..............................................................................36

48 Fed. Reg. 45670 .......................................................................................... 33, 46

75 Fed. Reg. 66832 ..................................................................................................46

75 Fed. Reg. 66915 ..........................................................................................44

**Other Authorities**

ACICS Accreditation Criteria Policies, Procedures, and
    Standards, No. 2-2-503(a) ........................................................................39

ACICS Accreditation Criteria § 3-1-441(c)............................................................33

Defendants Premier Education Group, L.P. and Premier Education Group, G.P., Inc. ("Defendants") respectfully submit this memorandum of law in support of their motion to dismiss the Fourth Amended Complaint ("FAC") pursuant to Federal Rules of Civil Procedure ("Rules") 8, 9(b), 12(b)(1), 12(b)(6) and 12(f).

## **PRELIMINARY STATEMENT & SUMMARY OF ARGUMENT**

This case is the latest of the recent wave of False Claims Act ("FCA"), 31 U.S.C. § 3279 et seq., *qui tam* lawsuits filed against career schools.  This action, however, goes far beyond those confronted by other courts.  Consequently, by asserting the most tenuous legal theories based upon speculative and vague allegations, Relators threaten to open the floodgates to unbridled and massive litigation.  More directly, Relators' unfounded and overreaching allegations would work a particular burden on the limited resources of this Court, as Relators will undoubtedly seek overwhelming civil discovery into every aspect of Defendants, including information and documents originating or somehow concerning six of Defendants' schools and 21 campuses spread across several states.  Respectfully, and for reasons more fully described below, this Court should not permit such legal theories and allegations to go beyond the pleading stage and should grant the instant motion to dismiss the FAC, in its entirety, and with prejudice.

Before delving into Relators' claims, Defendants must begrudgingly presume certain of the allegations to be true *solely* for the purpose of the instant

647440-6

motion.  Regardless, Defendants categorically deny that they engaged in any wide-spread, systemic wrongdoing or otherwise intentionally violated any federal, state or accreditor requirements.  Premier Education Group, L.P. is a leader in adult career training and it strives to foster pride, dignity, and self-respect in its student body.  Defendants did not become a leader in this field by engaging in the type of conduct alleged by Relators.

The FAC is brought by seven relators.  Relators LaPorte, Biaselli, Hone, Davenport and Amaya plead they were employed at the Linwood Campus of Defendants' Harris School of Business ("HSB"), a school alleged to include seven campuses spread across three states.  Relator Amaya alleges she was employed during different time periods at both the Linwood and Wilmington campuses of HSB.  And Relators Kenny and Moody allege they were employed at only the Wilmington Campus of HSB.

Relators assert eight counts.  Counts I through IV are based upon alleged violations of the federal FCA.  Relators Amaya and Moody, in Counts V through VIII, assert claims on behalf of themselves based upon alleged retaliatory discharges in violation of the federal FCA and state law claims for intentional infliction of emotional distress.

The theory of liability used to prop up Relators' primary counts (the federal FCA claims at Counts I through IV) are both attenuated and, in many respects,

invite this Court to apply novel and far-reaching theories. These claims are predicated upon the FCA and its 2009 amendments under the Fraud Enforcement Recovery Act ("FERA"), which make it unlawful to present or cause to be presented to the United States a claim for payment that is false or fraudulent. Relators claim that each time any of Defendants' 21 campuses draw down federal funds for any of its thousands of students, Defendants have "impliedly" submitted a false claim because the schools allegedly were not in compliance with all regulations.

Relators assert a litany of alleged wrongdoings, improprieties and regulatory violations purportedly engaged in by Defendants to advance their supposed "Fraudulent Scheme." FAC § V. For example, Relators allege Defendants admitted unqualified students (id. § V.A.1), altered students' grades from failing to passing (id. § V.A.3), changed attendance records (id. § V.A.4), employed high-pressure tactics to enroll students (id. § V.B) and made various misrepresentations to induce students to enroll (id. § V.C). To be sure, with the previously mentioned novel theories and slew of allegations, the FAC is impressive in its breadth, amounting to 116 pages and 365 enumerated paragraphs. But what the FAC accomplishes in destruction to the environment, it fails in pleading cognizable claims.

As a threshold matter, the Court lacks jurisdiction pursuant to 31 § 3730(b)(5), the "first-to-file rule," because there was a prior FCA *qui tam* action against Defendants, commenced nearly a year and half prior to the commencement of the instant action, based upon the same facts underlying the instant action. Part I.A, *infra*. Further, the FAC must be dismissed pursuant to the "prior public disclosure" doctrine of 31 U.S.C. § 3730(e)(4) because Relators are not true whistleblowers; the whistle they are attempting to blow has been sounded in news reports and prior litigations years ago. Indeed, not satisfied with the fictitious allegations made in the FAC and intending to litigate this action in the press, one of the Relators made defamatory statements about Defendants that appeared in a front page article in *The New York Times* a few weeks ago, prior to the filing of the FAC. Part I.B, *infra*.

In yet another example of Relators' overreaching and vague allegations, they repeatedly attempt to invoke a virtually unlimited time period, including allegations of pre-2006 conduct, despite all of the Relators being employed during limited one or two year periods, and despite the fact that many such allegations are barred by the applicable statues of limitations. Part II, *infra*.

Assuming the FAC survives the jurisdictional defects and statutes of limitations bars, the vague and speculative allegations must be dismissed nonetheless because they do not satisfy Rule 9(b)'s heightened pleading

requirement for claims sounding in fraud.  Part III, *infra*.  Moreover, as previously stated, Relators originate from only two campuses of one of Defendants' schools and were only employed during limited time periods, yet they assert sweeping allegations of misconduct originating from six schools and 21 campuses.  Given their compartmentalized exposure at only two campuses of one school, they do not nor can they plead personal and particularized knowledge of wrongdoing to satisfy Rule 9(b).

Relators' FCA claims must also be dismissed because such claims, to withstand a motion to dismiss, must plead violations of federal regulations and no such regulatory violations are pleaded.  Part IV.A, *infra*.  Further, the doctrine of implied false certification has been limited such that only those claims that allege violations of regulations that are a "precondition to payment" may survive a motion to dismiss, but Relators here have not pleaded violations of regulations that are preconditions to payment.  Part IV.B, *infra*.  Further, the doctrine of primary jurisdiction precludes Relators' claims because the Department of Education ("DOE") has the exclusive authority to make findings with respect to the subject regulatory violations.  Id.

Relators' "reverse false certification" claim (Count IV) must be dismissed because there are no new or separate allegations to support such a claim.  Part V, *infra*.  The FCA conspiracy claim (Count III) must also be dismissed because, *inter*

647440-6

*alia*, Relators have not pleaded the *prima facie* elements of the claim and because the intracorporate conspiracy doctrine (*e.g.*, a company cannot conspire with itself) mandates dismissal.   Part VI, *infra*.   Relator Moody's and Amaya's FCA retaliation claims (Counts V and VII) must be dismissed because they have not pleaded they were engaged in protected conduct under the statute, nor have they properly alleged that they were discriminated against because of such conduct.

With respect to federal oversight, Relators commenced the instant action on June 6, 2011 with the under seal filing of a complaint.   Thereafter, the complaint in this action was amended three times with each iteration adding new allegations, all while the action was still under seal.   Throughout the duration of this under seal time-period, the federal Department of Justice ("DOJ") conducted an investigation into the claims and allegations and ultimately declined to intervene in this action. See Certification of Richard M. Howard, Esq., dated February 4, 2014 ("Howard Cert.").   Undeterred, Relators have pressed forward, amending the complaint yet again after a motion to dismiss the Third Amended Complaint was filed, and will continue to harass Defendants unless the Court finally disposes of this action by granting the instant Motion, in its entirety, and with prejudice.[1]

---

[1] The pertinent facts referenced in this brief are largely taken from the FAC, the documents referred therein, facts and documents that are publicly available and/or the Howard Certification and the documents appended thereto.

## ARGUMENT

I.  **THE ACTION MUST BE DISMISSED FOR WANT OF JURISDICTION PURSUANT TO THE "FIRST-TO-FILE RULE" AND DUE TO PRIOR PUBLIC DISCLOSURES OF THE ALLEGED WRONGS.**

   A.  **The Court Lacks Jurisdiction Pursuant to the "First-to-File Rule."**

Relators' claims must be dismissed pursuant to the "first-to-file" provision of the FCA, 31 U.S.C. § 3730(b)(5).  Relators' claims and allegations are the subject of another, previously filed FCA *qui tam* action, U.S. ex rel. Bumgarner v. Premier Education Group, No. 1:10-cv-00787 (RMB)(KMW) (D.N.J.).  The filing of the Bumgarner action warrants dismissal of this action pursuant to Rule 12(b)(1).

Section 3730(b)(5) states, "When a person brings an action under this subsection, no person other than the Government may intervene or bring a related action based on the facts underlying the pending action."  Thus, "[t]he plain language of [31 U.S.C. § 3730(b)(5)] 'clearly bars claims arising from events that are already the subject of existing suits.'"  U.S. ex rel. Simpson v. Bayer Corp., 2012 WL 3600302, at *3 (D.N.J. Aug. 21, 2012) (quoting U.S. ex rel. LaCorte v. SmithKline Beechman Clinical Labs., Inc., 149 F.3d 227, 232 (3d Cir.1998)).

The first-to-file rule is a threshold, jurisdictional requirement.  See, e.g., U.S. ex rel. Mailly v. Healthsouth Holdings, Inc., 2010 WL 149830, at *4 (D.N.J. Jan. 15, 2010) ("Courts have routinely held [31 U.S.C. § 3730(b)(5) is] a jurisdictional

7

647440-6

requirement."). As such, Relators bear the burden of persuasion that the action should *not* be dismissed pursuant to Rule 12(b)(1), <u>Gould Electronics Inc. v. U.S.</u>, 220 F.3d 169, 178 (3d Cir. 2000), and the allegations are *not* to be construed in a light most favorable to Relators, <u>U.S. ex rel. Atkinson v. Pa. Shipbuilding Co.</u>, 473 F.3d 506, 514 (3d Cir. 2007).[2] Moreover, the later filed case "need not rest on precisely the same facts as a previous claim to run afoul of this statutory bar." <u>LaCorte</u>, 149 F.3d at 232. Rather, the later allegation must simply state the essential facts of the previously filed claim to be barred by § 3730(b)(5). <u>Id.</u> at 232-33.

The <u>Bumgarner</u> action was commenced on February 17, 2010. <u>See</u> Dckt. Rpt. (Howard Cert. Ex. E). This action was commenced approximately *a year and half later*, on June 6, 2011. The named relator in the previous action, Mr. Bumgarner, is a former employee of Defendants, allegedly having been employed at the precise campus (Linwood) of HSB where five of the seven Relators in the instant action allegedly were employed. <u>Compare</u> <u>Bumgarner</u> Cmplt. (Howard Cert. Ex. D) ¶ 10, <u>with</u> FAC ¶ 19, 22, 25, 28, 32. Critically, <u>Bumgarner</u>, like the instant action, is a purported *qui tam* action based upon alleged violations of the FCA. <u>See</u> <u>Bumgarner</u> Cmplt. (Howard Cert. Ex. D) ¶ 1.

---

[2] Should the Court determine that this jurisdictional question requires it to consider and weigh certain evidence, respectfully, the Court should stay all discovery, save limited and expedited jurisdictional discovery. <u>See, e.g.</u>, <u>U.S. ex rel. Sobek v. Educ. Mgmt., LLC</u>, 2013 WL 2404082, at *5 (W.D. Pa. May 31, 2013).

In attempting to establish FCA liability against Defendants, the two actions rest on the same underlying theory of liability.  In <u>Bumgarner</u>, relators alleged Defendants submitted "false or fraudulent records, statements, or claims . . . for obtaining financial aid from students in the form of loans and grants, which claims were made to the federal government . . . ." <u>Id.</u> (Howard Cert. Ex. D) ¶ 3.  Relators here characterize their action in a strikingly similar manner: "This is an action to recover damages and civil penalties on behalf of the United States, arising from false statements and claims that PEG knowingly presented to, or caused to be presented to, the United States in violation of the FCA." FAC ¶ 1.

While dismissal pursuant to the first-to-file rule does *not* require identical allegations, <u>see</u> <u>LaCorte</u>, 149 F.3d at 232-33, the allegations of the specific mechanisms by which Defendants purportedly accomplished their supposed (albeit, fictitious) company-wide fraud are the same.  Indeed, virtually every substantive allegation the relators pled against Defendants in <u>Bumgarner</u> has been parroted by Relators here.  For example, and in no way constituting an exhaustive comparison of the exact, overlapping and/or similar allegations:

- ***Allegations of misrepresentations to accreditors***.  <u>Compare</u> <u>Bumgarner</u> Cmplt. ¶ 13.1, at 4; <u>id.</u> ¶ 14.A, at 5; <u>id.</u> ¶ 30, at 13; and <u>id.</u> ¶ 31.C, at 14, <u>with</u> FAC at 81 ("ii. PEG Misrepresented Its Loss of Institutional Accreditation and Lied to Accreditation Agencies."); <u>id.</u> ¶ 262-63; and <u>id.</u> ¶ 271 (citing ACICS Accreditation Criteria).

- ***Allegations regarding the admission of unqualified students:*** <u>Compare</u> <u>Bumgarner</u> Cmplt. ¶ 6; <u>id.</u> ¶ 31.E, at 14; <u>id.</u> ¶ 43, at 18; <u>id.</u> ¶ 44, at 19; <u>id.</u>

9

¶ 70.A, at 33; and <u>id.</u> 96.G, at 43, <u>with</u> FAC at 41 ("PEG Admitted Students Who Were Obviously Unqualified for Admission, and Who Were Incapable of Completing the Educational Program, and it Fabricated Test Results"); <u>id.</u> 47 ("V.A.1.ii. PEG Admitted Known Felons Who Were Either Ineligible for Federal Financial Aid or Could Not Obtain Licensure in Their Chosen Fields"); <u>id.</u> ¶ 157.

- ***Allegations of misrepresentations regarding job placement:*** <u>Compare</u> <u>Bumgarner</u> Cmplt. ¶ 8, at 8; <u>id.</u> ¶ 31.H, at 15; <u>see also id.</u> ¶ 44, at 19; <u>id.</u> ¶ 97, at 43; <u>id.</u> ¶ 96.A-G, at 43, <u>with</u> FAC at 82 ("2. PEG Misled Prospective Students Regarding Its Career Placement Performance"); <u>id.</u> ¶ 262-63; <u>id.</u> ¶ 265.

- ***Allegations of altered attendance records and course grades*:** <u>Compare</u> <u>Bumgarner</u> Cmplt.¶ 8, at 8; <u>id.</u> ¶ 14.B, at 9; <u>id.</u> ¶ 31.M, at 15; ¶ 102, at 60, <u>with</u> FAC ¶¶ 176-226.

- ***Allegations of altered or falsified admissions exams*:** <u>Compare</u> <u>Bumgarner</u> Cmplt.¶ 31.F, at 14; <u>id.</u> ¶ 69, at 33; <u>id.</u> ¶ 70, at 33; <u>id.</u> at 59 ("So basically we can tweak the admissions test to get students in the door."), <u>with</u> FAC at ¶ 299(iii); <u>id.</u> ¶ 316(i).

- ***Allegations that Defendants used prohibited incentive compensation*:** <u>Compare</u> <u>Bumgarner</u> Cmplt. ¶ 31.P, at 16, <u>with</u> FAC at 110 ("PEG Used Prohibited Incentive Compensation To Induce Employees to Participate in Its Fraudulent Scheme"); <u>id.</u> ¶¶ 289-305.

Thus, the <u>Bumgarner</u> action has already asserted the primary theories of liability later mimicked by Relators here and virtually every substantive category of allegations put forth to support Relators' misguided theories of liability have already been asserted in the <u>Bumgarner</u> action.  Accordingly, the first-to-file rule warrants dismissal pursuant to Rule 12(b)(1).[3]

---

[3] The <u>Bumgarner</u> action was dismissed, without prejudice, on September 16, 2013. <u>See</u> Order, Dckt. Rpt. 14 (Howard Cert. Ex. E).  The dismissal, however, does not alter the inevitable outcome that the Court lacks jurisdiction.  <u>See U.S. ex rel.</u>

**B.    Prior Public Disclosures Mandate Dismissal of the Action.**

The Court should also dismiss the action because Relators' allegations are substantially similar to publically available information and, as such, the Court cannot entertain the suit.  31 U.S.C. § 3730(e)(4) states, in pertinent part:

> The court shall dismiss an action or claim under this section, unless opposed by the Government, if substantially the same allegations or transactions as alleged in the action or claim were publicly disclosed (i) in a Federal criminal, civil, or administrative hearing in which the Government or its agent is a party; . . . or (iii) from the news media, . . . unless . . . the person bringing the action is an original source of the information.

Known as the "public disclosure bar," 31 U.S.C. § 3730(e)(4) has "generally broad scope," and its purpose is "to strike a balance between encouraging private persons to root out fraud and stifling parasitic lawsuits." U.S. ex rel. Zizic v. Q2Administrators, LLC, 728 F.3d 228, 235 (3d Cir. 2013) (internal quotation marks and citations omitted).  Due to, *inter alia*, the Bumgarner action and various news media reports on previous allegations that later formed the crux of Relators' claims, and because Relators do not specifically allege that they were the original sources of the information reported on in the news reports, Relators claims are revealed as nothing but parasitic claims that must be dismissed.

---

Piacentile v. Sanofi Synthelabo, Inc., 2010 WL 5466043, at *4 (D.N.J. Dec. 30, 2010) ("even complaints that are later dismissed have preclusive effect.") (citing U.S. ex. rel. Lujan v. Hughes Aircraft Co., 243 F.3d 1183, 1189 (9th Cir.2001) (holding "that § 3730(b)(5) establishes an exception-free, first-to-file bar" and further holding "that subsequently dismissed cases constitute pending actions under § 3730(b)(5).")).

First, as previously discussed, the Bumgarner action was filed in 2010, approximately a year and a half prior to the instant action, and the two actions contain substantially the same allegations. Moreover, as an FCA *qui tam* suit, the federal government was a party to that action. See Bumgarner Dckt. Rpt. (Howard Cert. Ex. E). As such, not only does the Bumgarner action strip the Court of jurisdiction over the instant suit pursuant to the first-to-file rule, it also warrants dismissal pursuant to 31 U.S.C. § 3730(e)(4)(A)(i).[4]

Second, Relators' allegations have been the subject of numerous news media reports since, at least, 2007 and continuing until just several weeks ago. For example, on September 6, 2007, six former students at HSB commenced suit against Defendants. See Consumer Fraud Complaint in Harrigan, et al. v. Premier Education Group, L.P. d/b/a Harris School of Business of Linwood, et al., No. L-2924-07 (N.J. Super. Ct., Law Div., Atl. Cnty.) (Howard Cert. Ex. P). Like Relators here, the Harrigan Plaintiffs alleged misconduct, including that Defendants improperly changed students' grades and altered students' attendance records with the intent of defrauding the federal government of student loan funds. Compare Harrigan Cmplt. ¶¶ 57, 58, with FAC ¶¶ 176-226. The Harrigan lawsuit was reported on in the news media. See, e.g., Howard Cert. Ex. L.

---

[4] See also Sobek, 2013 WL 2404082, at *5 (ordering limited and expedited discovery into the issue of prior public disclosure).

Subsequent to <u>Harrigan</u> but still well-prior to the instant action, a virtually identical lawsuit was filed against Defendants on behalf of fourteen different HSB students on December 8, 2008.   <u>See</u> Complaint <u>in</u> <u>Gomez et al. v. Premier Education Group, L.P. d/b a Harris School of Business of Linwood, et al.</u>, No. L-4412-08 (N.J. Super. Ct., Law Div., Atl. Cnty) (Howard Cert. Ex. F).  Like the previous <u>Harrigan</u> lawsuit, the <u>Gomez</u> action was the subject of news media reports.  <u>See, e.g.</u>, Howard Cert. Ex. K.

Yet another lawsuit was filed against Defendants in New Jersey state court in March 2011 on behalf of thirty-seven Plaintiffs asserting nearly identical allegations as the allegations previously asserted in the <u>Harrigan</u> and <u>Gomez</u> cases. <u>See</u> Complaint <u>in</u> <u>Eagen, et al. v. Premier Education Group, L.P., d/b/a The Harris School of Business of Linwood, et al.</u>, No. 2128-11 (N.J. Super. Ct., Law Div., Atl. Cnty.) (Howard Cert. Ex. G).  The <u>Eagen</u> complaint was amended several times and the most recent iteration is a virtual carbon-copy of the initial complaint in the instant action.  <u>Compare</u> <u>Eagen</u> Second Am. Cmplt., dated Oct. 20, 2011 (Howard Cert. Ex. 13), <u>with</u> <u>LaPorte</u> Cmplt., Dckt. Rpt. No. 26.  Indeed, the similarities in allegations are not surprising given lead counsel in the <u>Gomez</u> and <u>Eagen</u> actions, David I. Sinderbrand, is lead counsel in the instant action.  <u>See</u> <u>Gomez</u> Cmplt; <u>Eagen</u> Cmplts.; <u>LaPorte</u> Dckt. Rpt.  (Howard Cert. Exs. B, F, G, H.).  Like the

13

reports on the <u>Harrigan</u> and <u>Gomez</u> actions, the media also reported on the allegations made in the <u>Eagen</u> lawsuit.  <u>See, e.g.</u>, Howard Cert. Ex. M.

Relators have chosen to litigate *this* case in the media, as Relator Amaya made false and defamatory statements about Defendants to a reporter, which appeared in an article entitled "Federal Lawsuit Accuses For-Profit Schools of Fraud" published on the front page of *The New York Times* on February 19, 2014. <u>See</u> Howard Cert. Ex. Q.   The February 19th publication of this article was prior to Relators' filing of the FAC on February 27, 2014 and, therefore, the public disclosure bar mandates dismissal of the FAC.

Finally, Relators were employed at only two campuses of one school, HSB-Linwood and HSB-Wilmington, and only during limited time periods (FAC ¶¶ 17-40), yet they assert sweeping allegations of a company-wide fraud originating at six schools and 21 campuses over a seemingly unlimited time period.  As the court in <u>U.S. ex rel. Nelson v. Sanford-Brown, Ltd.</u>, 2014 WL 1052944, at *4 (E.D. Wis. Mar. 17, 2014), recently held, such lack of "direct and personal knowledge of the allegations and transactions at [other campuses]" and outside of the time of employment, strip the Court of subject matter jurisdiction "both as to time and

647440-6

location" under § 3730(e)(4).[5]   See also Part III.B (arguing Relators'

compartmentalized knowledge also warrants dismissal pursuant to Rule 9(b)).

## II.   RELATORS' CLAIMS ARE BARRED BY APPLICABLE STATUTES OF LIMITATIONS.

Relators' federal FCA claims are subject to a six-year statute of limitations.

31 U.S.C. § 3731(b)(1).   Relator Amaya's and Moody's retaliation claims are

subject to three-year statutes of limitations, 31 U.S.C. § 3730(h)(1)(3), while their

intentional infliction of emotional distress claims are subject to two-year statutes of

limitations, E.E.O.C. v. Avecia Inc., 2003 WL 22432911, at *2 (D. Del. Oct. 23,

2003) (citing 10 Del.C. § 8119).   Many of Relators' allegations are so vague that

their claims may well be time-barred by these statutes of limitations.

Importantly, the FCA's six-year statute of limitation runs from August 9,

2013, the date of the unsealing of the Third Amended Complaint (see Dckt. Rpt.

25, Unsealing Order of the Court) because this is the first date for which

Defendants had notice of Relators' allegations.   See United States v. The Baylor

Univ. Med. Ctr., 469 F.3d 263, 270 (2d Cir. 2006) ("the seal provision of §

3730(b) deprives the defendant in an FCA suit of the notice usually given by a

complaint.   Because any relation back of subsequent filings to the original

---

[5] The Nelson court also directed relators to file "detailed evidence to establish compliance with the 'voluntary disclosure' requirements of § 3730(e)(4)(B)" or risk dismissal.  The Court here should require such a filing of Relators here.

complaint is incompatible with the core requirement of notice under Rule 15(c)(2), continued running of the statute of limitations is warranted.").

Alternatively, the allegations in the FAC should only relate back to the filing of the Third Amended Complaint on May 9, 2013 (see Dckt. Rpt. 14) because the prior pleadings (i.e., the initial, Amended, and Second Amended Complaints) have been superseded and rendered of no legal effect. Semulka v. Moschell, 401 F. App'x 628, 629 (3d Cir. 2010) ("An amended complaint supersedes the original complaint and renders it of no legal effect unless the amended complaint specifically refers to and adopts or incorporates by reference the earlier pleading.") (internal citation omitted).

Thus, under the FCA's six-year statute of limitations, any allegations in the FAC describing events prior to August 9, 2007, or alternatively, prior to May 9, 2007, must be dismissed. See, e.g., FAC ¶¶ 2, 5, 88, 95, 133(i), 184, 191, 209, 281, 286, 292, 293, 295, 315, 316(i), 316(v) & 317.

## III.   THE ACTION MUST BE DISMISSED FOR FAILURE TO PROPERLY PLEAD PURSUANT TO RULE 8 AND TO PLEAD FRAUD WITH PARTICULARITY PURSUANT TO RULE 9(b).

It is axiomatic that Relators' "FCA claims must be pleaded with particularity in accordance with Fed.R.Civ.P. 9(b)." U.S. ex rel. Schmidt v. Zimmer, Inc., 386 F.3d 235, 242 n.9 (3d Cir. 2004). Rule 9(b) "requires, at a minimum, that plaintiffs support their allegations of … fraud with all of the essential factual background

647440-6

that would accompany the first paragraph of any newspaper story – that is, the who, what, when, where and how of the events at issue." U.S. ex rel. Pilecki–Simko, et al. v. Chubb Inst., 2010 WL 1076228, at *7 (D.N.J. Mar. 22, 2010) (Chubb I) (internal quotation marks and citation omitted).  "Although Rule 9(b) permits a plaintiff to generally allege a defendant's mental state," courts have held that "the Rule … still require[s] plaintiffs to allege facts that show the court their basis for inferring that the defendants acted with 'scienter." Id. (internal quotation marks and citation omitted).

Relators' allegations fail to meet Rule 8's pleading requirements, U.S. ex rel. Pilecki-Simko v. The Chubb Institute, 443 F. App'x 754 (3d Cir. 2011) ("Chubb II"), and fall far short of satisfying the heightened pleading requirements of Rule 9(b), for at least two reasons, as discussed further below.

**A.    The Action Should be Dismissed Because the PPA Violations Have Not Been Pleaded with the Requisite Particularity.**

**1.    *Allegations that Defendants Caused Financial Aid to be Awarded to Ineligible Students Are Not Pleaded with Particularity.***

Relators allege that Defendants admitted students who were ineligible for federal financial aid and permitted or caused those students to apply and receive such aid (FAC § V.A) in violation of its Program Participation Agreements

17

("PPA").[6]   Relators provide several vague "examples" of students who were allegedly ineligible for financial aid, but who nevertheless attended Defendants' schools. However, even a cursory review of the allegations reveal that Relators have failed to allege the "who, what, when, where and how" of the events surrounding these claims. Chubb I, 2010 WL 1076228, at *7.

Relators' vague "examples" regarding student eligibility fail for, at least, three reasons. First, and most importantly, none of the examples identify students who actually submitted claims for moneys to the government. Second, the examples do not allege how the students were ineligible for financial aid. Finally, Relators have failed to plead that Defendants acted with the requisite scienter; there are no allegations that any of the Defendants either knew these students were ineligible for federal financial, or that these allegedly ineligible students would apply for financial aid. The anecdotal "examples" are far too numerous to address individually.

Relators also fail to allege if the individuals applied for and received financial aid from the federal government. U.S. ex rel. Knisely v. Cintas Corp., Inc., 2014 WL 983468, at *9 (E.D. Pa. Mar. 14, 2014) (plaintiff "has failed to

---

[6] FAC § V.D contains similar assertions. However, Section V.D fails to allege *any* examples of admissions and financial aid employees who encouraged students to apply for federal financial aid or executed certifications that Defendants were eligible to receive financial assistance. Accordingly, and for the sake of brevity, arguments seeking dismissal of Relators' claims based on ineligible students receiving financial aid are directed solely FAC §V.A.

18

allege an FCA violation with the requisite Rule 9(b) precision in that Knisely failed to identify a single false claim, or the time, place, or individuals allegedly involved in submitting any claims").   There is no allegation that a claim was actually submitted to the government, "the *sine qua non* of a False Claims Act violation." U.S. ex rel. Clausen v. Lab. Corp. of Am., Inc., 290 F.3d 1301, 1311 (11th Cir. 2002); see also U.S. ex rel. Schmidt v. Zimmer, Inc., 2005 WL 1806502, at *2 (E.D. Pa. July 29, 2005).  Relators allege that the individuals were "not qualified to receive financial aid" (FAC ¶ 130), but they do not allege the individual students actually applied for and received such aid or how much aid they received.  This, and all other "examples" (e.g., FAC ¶¶ 133, 139-42, 150-51, 158, 163-64, 166, 173), of ineligible students, should be completely disregarded because a pleading "must sufficiently establish that false claims were submitted for government payment as a result of the defendant's alleged misconduct." U.S. ex rel. Ge v. Takeda Pharm. Co. Ltd., 737 F.3d 116, 124 (1st Cir. 2013) (internal quotation marks and citation omitted).

Relators' examples of ineligible students also do not allege with particularity why these individuals were ineligible for financial aid.  Relators improperly cite to 34 C.F.R. § 668.32(e)(1) in implying that the individual students were ineligible to receive financial aid funds.  FAC § V.A., ¶ 132.  Relators mischaracterize this regulation as requiring that students have a high school diploma or its recognized

equivalent in order to receive financial aid funds.  Id.  In fact, 34 C.F.R. § 668.32 specifies several ways in which a student may be eligible for receiving financial aid without having obtained a high school diploma or its recognized equivalent.  34 C.F.R. § 668.32(e)(1)-(5).  There is no allegation that students were not eligible to receive financial aid funds under the other provisions of 34 C.F.R. § 668.32(e). These allegations fail to meet the heightened pleading standard because there are no specific allegations to support the hollow conclusion that "the mere admission of this student violated [Defendants'] PPA requirements." Chubb I, 2010 WL 1076228, at *9.

These purported examples are also insufficient because Relators "fail[] to aver circumstantial facts enabling the inference that [Defendants] acted with scienter with regard to admitting allegedly unqualified students." Id. (citing In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1418 (3d Cir. 1997)).  There is simply no allegation that any of Defendants' employees knew that these students should not be admitted or knew that the admission of these students violated Defendants' obligations under the PPA.  Id.  As noted, the FAC is devoid of any particularized allegations supporting the conclusion that these individuals were, in fact, ineligible for financial aid.  As a result, it is impossible to make the inference that Defendants' employees knew students were ineligible when assisting them with financial aid applications.   Consequently, "the [FAC] fails to allege

circumstantial facts enabling the inference that [Defendants] acted with scienter in

assisting ineligible students apply for Title IV financial aid." Id.

**2.    *Allegations that Defendants Used High-Pressure Tactics to Enroll Students Under False Pretenses are Not Pleaded With Particularity.***

The allegations regarding Defendants' use of high-pressure tactics to enroll

students (FAC § V.B) are deficient pursuant to Rule 9(b).  Specifically, the

allegations: (i) are not related to claims for payment submitted to the government;

(ii) do not describe high-pressure tactics with any particularity; and (iii) even when

taken as true, fail to show how Defendants violated any PPA obligations.

The allegations in Section V.B. are completely unrelated to claims for

payment and do not otherwise meet the heightened pleading requirements of

Rule 9(b).  The allegations here fail for the same reason the Court in U.S. ex rel.

Sobek v. Educ. Mgmt., LLC, 2013 WL 2404082 (W.D. Pa. May 31, 2013),

dismissed one of the relators' counts under Rule 9(b), *i.e.*, there are no specific

examples of Defendants' employees utilizing high-pressure sales tactics.  2013 WL

2404082, at *26.  Rather, all of the averments are "non-specific and vague." Id.

Further, there are no allegations specifying when high-pressure tactics were used

or whether the tactics resulted in ineligible students receiving financial aid.

Finally, the claims warrant dismissal because there is absolutely no

allegation that the purported high-pressure tactics violated Defendants' obligations

647440-6

under the PPA or any regulations. FAC ¶¶ 227-48.  Because Relators have not pleaded how the alleged high-pressure recruitment tactics violate the various PPAs or underlying statutes and regulations, all claims and allegations asserted in Section V.B must be dismissed pursuant to Rule 9(b).  U.S. ex rel. Gatsiopoulos v. Kaplan Career Inst., 2010 WL 5392668, at *6 (S.D. Fla. Dec. 22, 2010).

### 3. *Allegations that Defendants Made Material Misrepresentations to Induce Students to Enroll in Their Institutions Are Not Pleaded with Particularity.*

Relators have asserted only conclusory allegations that Defendants made various misrepresentations to students to induce them to enroll at Defendants' schools. FAC § V.C.  There are no specific allegations regarding who made these alleged misrepresentations or when they were supposedly made.  There is no specific allegation that any of the students to whom misrepresentations were purportedly made actually applied for and received financial aid.

Finally, Relators here, like the relators in Chubb I, have not alleged that any of the Defendants acted with the requisite scienter; that is, that the Defendants knew the falsity of the alleged misrepresentations and that the Defendants "knowingly committed acts in violation of § 3729." 2010 WL 1076228, at *8. Accordingly, Relators' allegations regarding misrepresentations to students must be dismissed pursuant to Rule 9(b).

4.     ***Allegations That Defendants Used Prohibited Incentive Compensation for Employees Are Not Pleaded with Particularity.***

Relators have alleged that Defendants violated the PPAs by utilizing prohibited compensation for employees in violation of the federal Incentive Compensation Ban, Higher Education Act ("HEA"), 20 U.S.C. § 1094(a)(20). FAC § V.E, ¶ 289.  However, Relators acknowledge that from 2002 through 2011 there were Safe Harbor Provisions "for activities that were deemed to not violate the restrictions on incentive compensation."  Id. ¶ 290.  Essentially, Relators attempt to allege that Defendants' "form Premier Education Group LP Admissions Representative Compensation Plan, offered to all PEG admissions employees" (id. ¶ 297) during the time period of the FAC, violated the Incentive Compensation Ban in two ways: (i) as written (id. ¶¶ 297-98, 304); and (ii) as implemented (id. ¶¶ 291-96, 299-303, 305).

First, Relators fail to sufficiently plead that the "Premier Education Group LP Admissions Representative Compensation Plan" violates the applicable Safe Harbor provision as written.   During the pertinent time period, 34 C.F.R. § 668.14(b)(22)(ii)(E)[7] allowed educational institutions to provide "compensation that is based upon students successfully completing their educational programs, or one academic year of their educational programs, whichever is shorter."  Relators

_____

[7] This section of the C.F.R. has since been amended to remove these Safe Harbor provisions.

concede that the plan, as written, only "offered a bonus of $40 per graduate for admissions representatives and $60 per graduate for senior admissions representatives." FAC ¶ 297. This alleged compensation falls squarely within the Safe Harbor provision of 34 C.F.R. § 668.14(b)(22)(ii)(E). As a matter of law, Relators have not pleaded that Defendants violated the PPA based on their written compensation plan and such allegations and any claims premised upon them must be dismissed. U.S. ex rel. Washington v. Educ. Mgmt. Corp., 871 F. Supp. 2d 433, 448 (W.D. Pa. 2012) (hereinafter, "Washington") (citation omitted).

Second, allegations that Defendants' compensation plan, as implemented, violates the Incentive Compensation Ban (FAC § V.E), are not pleaded with particularity. Relators do not allege who made the supposed "promises," when the promises were made, whether the purported bonuses were ever paid and whether Defendants acted with the requisite scienter. See U.S. ex rel. Hoggett v. Univ. of Phoenix, 2012 WL 2681817, at *5 (E.D. Cal. July 6, 2012) ("Relators meet their burden[, under Rule 9(b),] by naming individual officers and employees of UOPX who have participated in the fraudulent conduct, and detailing how the fraud was carried out."). Thus, because Relators' allegations concerning violations of the Incentive Compensation Ban, as implemented, do not provide the "who, what, when, where and how" of the events surrounding these claims (Chubb I, 2010 WL

24

1076228, at *7), the allegations should be dismissed for failing to meet the heightened pleading requirements of Rule 9(b).

### B. The Action Should At Least be Limited to Those Campuses Where Misconduct is Alleged to Have Taken Place.

Assuming, *arguendo*, that the Court does not dismiss this action altogether, Relators' sprawling FAC should be pared down to include only allegations that have been pleaded with particularity in accordance with Rule 9(b). The FAC has alleged that six of Defendants' schools, comprised of 21 campuses throughout several states, have fraudulently obtained federal monies. FAC ¶¶ 47-51. Relators are ostensibly seeking the recovery of funds obtained by each of the 21 campus of those six schools. However, Relators were employed at only two campuses of one school, HSB-Linwood and HSB-Wilmington, and only during limited time periods. FAC ¶¶ 17-40. Consequently, Relators have not, because they cannot, please direct knowledge of allegations originating from any other campus.

Notwithstanding the foregoing, Relators attempt to impute the alleged misconduct taking place at HSB-Linwood and HSB-Wilmington to all 21 campuses of Defendants' six schools. Relators fail to allege *any* misconduct taking place at several of the schools and the vast majority of Defendants' campuses. Courts have routinely dismissed similar claims where a relator has alleged

25

misconduct specific to only one location of a business entity defendant with multiple locations.[8]

Among the schools identified by Relators are Salter College (FAC ¶ 48(iii)), Seacoast Career Schools (FAC ¶ 48(v)) and Suburban Technical School (FAC ¶ 48(vi)). Salter College is mentioned again only once when Relators allege that School Director Charlene Keefe instructed Sonia Patota, allegedly an admissions representative at Salter College from January 2009 to April 2010, "to enroll students with felony convictions, but to direct them into programs (*e.g.* medical billing) where a criminal record would not automatically preclude employment." FAC ¶ 154. Relators have not alleged that such enrollment was unlawful or even inappropriate. Indeed, it would seem that Relators would prefer Defendants to discriminate against individuals solely on the basis of their criminal history, contrary to the law of Massachusetts where Salter College is located (FAC ¶ 49(iii)). See, e.g., Mass. Gen. Laws Ann. ch. 151C, § 2(f) (West) (it is an unfair education practice for an educational institution to request certain information regarding an applicant's criminal history); Mass. Gen. Laws Ann. ch. 151B,

---

[8] U.S. ex rel. Saldivar v. Fresenius Med. Care Holdings, Inc., 906 F. Supp. 2d 1264, 1277 (N.D. Ga. 2012); U.S. ex rel. Wall v. Vista Hospice Care, Inc., 778 F. Supp. 2d 709, 723 (N.D. Tex. 2011); U.S. ex rel. Harris v. Alan Ritchey, Inc., 2006 WL 3761339, at *6 (W.D. Wash. Dec. 20, 2006); see also Tredennick v. Bone, 323 F. App'x 103, 105 (3d Cir. 2008) ("where multiple defendants are involved, the complaint should inform each defendant of the nature of his alleged participation in the fraud.").

§ 4(9½) (West) (unlawful for employers to inquire into applicant's criminal convictions unless otherwise required by federal or state law).

Suburban Technical School is also only mentioned fleetingly after first being identified in the FAC. FAC ¶ 293. However, those allegations do not state a violation of any statute or regulation. <u>Id.</u> Similarly, allegations referencing Seacoast Career School, or "SCS," do not allege conduct violative of any regulation or statute. <u>Id.</u> ¶ 248, 270, 295.

While the allegations against Salter School and Branford Hall are more numerous than the allegations against the other four schools, they still fail to meet the heightened pleading requirements of Rule 9(b). The allegations concerning Salter School (FAC ¶¶ 110, 112, 135, 153-54, 226, 237 & 310) and Branford Hall (FAC ¶¶ 113, 120, 135-36, 155, 162, 165, 184-85, 208-209, 244, 268-69, 283-84, 294, 296 & 310) are nothing but irrelevant narratives from non-relator witnesses who derive their information from unidentified sources. Assuming Relators can rely upon third parties to supply their personal and direct knowledge (and they may not), these unrelated anecdotes fail to provide the requisite details about when the events took place or how they are connected to fraud on the government. Therefore, Relators do not "place the defendants on notice of the precise misconduct with which they are charged," as required by Rule 9(b). <u>Seville Indus. Mach. Corp. v. Southmost Mach. Corp.</u>, 742 F.2d 786, 791 (3d Cir. 1984).

Finally, all claims against HSB should be dismissed pursuant to Rule 9(b). Relators have not alleged with particularity that fraudulent conduct was carried out in all seven campuses of HSB.  <u>Harris</u>, 2006 WL 3761339, at *1 (dismissing company-wide fraud claims because there were only specific allegations concerning one of the company's manufacturing plants  and those claims did not impute liability to all of the company's plants for purposes of Rule 9(b)).

## IV.   THE FALSE CERTIFICATION CLAIMS (COUNTS I AND II) MUST BE DISMISSED FOR FAILURE TO STATE A CLAIM PURSUANT TO RULE 12(b)(6).

Counts I and II, premised upon the FCA, should be dismissed as a matter of law pursuant to Rule 12(b)(6).[9]  Subsection (a)(1)(A) of the FCA makes it unlawful to present or cause to be presented to the United States a claim for payment that is false or fraudulent and known to be so by the defendant.  31 U.S.C. § 3729 (a)(1)(A); <u>see also</u> <u>Chubb I</u>, 2010 WL 1076228, at *4. Subsection (a)(1)(B) of the FCA prohibits a party from making or using, or causing someone else to make or use, a false record to cause a false claim to be paid or approved.   31 U.S.C. § 3729 (a)(1)(B).  To defeat a motion to dismiss, a relator must allege that: (i) defendant made or caused a claim of payment to be made to the U.S.; (ii) the

---

[9] A complaint must be dismissed if it does not allege enough facts to state a claim for relief that is plausible on its face.  <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544 (2007); <u>see also</u> <u>Ashcroft v. Iqbal</u>, 556 U.S. 662 (2009).  A complaint that recites elements of a cause of action supported by mere conclusory statements will not state a plausible claim for relief.  <u>Iqbal</u>, 556 U.S. at 678.  The factual allegations must be more than conceivable; they must be plausible.  <u>Id.</u> at 679.

647440-6

claim was false or fraudulent; and (iii) the claim was known to be false by the defendant.  <u>Chubb II</u>, 443 F. App'x at 759 (citation omitted).  In addition, a relator must allege that the false statement is material to the government and that the government paid monies as a result.  <u>Sobek,</u> 2013 WL 2404082, at *21 n.5.

The FCA *qui tam* career school cases are unlike other FCA cases in which the typical claim is the submission of a false invoice to a government agency and the claim fits squarely within the plain language of the statute.  <u>Chubb I</u>, 2010 WL 1076228, at *5.  The theory of liability in the *qui tam* career school cases is far more attenuated and relies upon concepts of "certification" or "eligibility." Career schools sign a PPA to be eligible to participate in HEA Title IV financial aid programs and receive government payment of the proceeds of student loans and grants.  The PPAs contain statements certifying that the career school will comply with governing statutes and regulations.  No separate further certification is made each time a school draws down on federal financial aid funds for any particular student.   Yet Relators claim here that each time such a draw down occurs, Defendants have "impliedly" submitted a false claim because the schools allegedly were not in compliance with regulations; as a result, Defendants were ineligible to participate in the financial aid program and draw down on funds.

Conceding that Defendants have not submitted "factually false" claims to the government, Relators assert that Defendants allegedly submitted a "legally

false" claim; *i.e.*, Defendants falsely certified compliance with statutes and regulations. <u>Sobek</u>, 2013 WL 2404082, at *22. Relators' claims are even more attenuated because they rely upon a dichotomy in "legally" false certification theories of liability; express versus implied false certification:

> Under the 'express false certification theory, an entity is liable under the FCA for falsely certifying that it is in compliance with regulations that are prerequisites to Government payment in connection with the claim for payment of federal funds. Under the broader 'implied false certification' theory... liability attaches when a claimant seeks and makes a claim for payment from the Government without disclosing that it has violated regulations that affect its eligibility for payment. . .'the act of submitting a claim for reimbursement itself implies compliance with governing federal rules that are a precondition to payment.'

<u>Sobek</u>, 2013 WL 2404082, at *22 (quoting <u>U.S. ex rel. Wilkins v. United Health Care Group, Inc.</u>, 659 F.3d 295 (3d Cir. 2011)). Relators rely upon "implied false certification" theories; *i.e.*, without further certification submissions, Defendants' drawing down on federal funds implied compliance with regulations. <u>Id</u>.

The Third Circuit has only permitted implied certification claims in the context of Medicare cases. <u>Wilkins</u>, 659 F.3d at 307. Even so, the Third Circuit imposed limits on the use of this tenuous theory of liability, holding that a party's knowingly false certification of compliance with regulations would only be an actionable FCA claim when government payment of the defendant's claim is conditioned on compliance with a particular regulation. <u>Id.</u> If the regulation merely affects the defendant's participation in a government program but does not

30

preclude the government's payment of a claim, no FCA claim based upon an implied false certification theory can be stated. <u>Id.</u> at 307-11.

Relators invite this Court to apply the false certification theory in this career school context; an application the Third Circuit has not fully endorsed. Relators' broad and wildly speculative FCA claims not only seek to apply this theory to career school FCA *qui tam* cases in this Circuit, but to stretch the tenuous theory of implied false certification far beyond the outer bounds of the law. As demonstrated below, Relators' claims must be dismissed, or at a minimum, pared down for two primary reasons. First, Relators have failed to demonstrate that Defendants have violated Title IV regulations. Second, most, if not all, the regulations cited by Relators are conditions of participation and not conditions of payments.

**A.     No FCA Claim Can Be Stated Without a Regulatory Violation and Relators Fail to Allege Such Violations.**

Courts "cannot impose FCA liability" if, as here, relators' claims are premised upon false certification of compliance with regulations, but the regulations at issue do not prohibit the alleged misconduct. <u>U.S. ex rel. Quinn v. Omnicare, Inc</u>, 382 F.3d 432, 440-41 (3d Cir. 2004). Stated another way, Relators cannot plead the falsity element of an FCA claim without alleging that Defendants violated a regulatory provision. <u>Id.</u> at 440-41; <u>U.S. ex rel. Diaz v. Kaplan Univ.</u>, 2011 WL 3627285, at *4-7 (S.D. Fla. Aug. 17, 2011) ("<u>Diaz</u>") (dismissal of FCA

31

claims against a school for failure to plead a violation of HEA regulations as to enrolling unqualified students, grade inflation, extreme pressure upon admissions representatives to perform, among others).   As the Court held in <u>Diaz</u>, a career school FCA *qui tam* case that mirrors this action, even if Relators can plead detailed and truthful allegations, the FCA claim must be dismissed unless the allegations constitute a violation of a regulation.   2011 WL 3627285, at *4-7. Here, Relators allege certain categories of wrongdoing, addressed below, but have failed to show how such conduct violates any regulation.

***Allegations of Improprieties in the Admissions Process.***   Relators allege that Defendants "Misled Prospective Students Regarding its Career Placement Performance." FAC at 82.   Although Relators allege that "PEG is required to disclose detailed consumer information to students and prospective students, including job placement rate (sic) for its students after graduation.  <u>See</u> 34 C.F.R. §§ 668.141-145; §§ 668.14(b)(9)-(11)," (FAC ¶ 259), Relators fail to allege how Defendants violated those regulations.    Instead, Relators have either avoided linking particular violations to regulations and/or misconstrued the cited regulations entirely.[10]    For instance, Relators' citation to 34 C.F.R. § 668.14(b)(10), concerning job placement statistics (FAC ¶ 259), merely requires

---

[10] By way of example, 34 C.F.R. § 668.141-145, cited by Relators at FAC ¶ 259, has nothing to do with "job placement rates."

that the information be made available to students and there is no allegation in the FAC that the information was not made available.  See FAC at 82-88.

Indeed, Relators do not allege a violation of any particular regulations and the DOE does not regulate how placement statistics should be calculated, leaving career schools the discretion to calculate their own methods of calculation, see generally 48 Fed. Reg. 45670.  Instead of citing federal regulations, Relators allege violations of an industry body that publish ACICS Accreditation Criteria, and then the only criteria Relators cite merely require the maintaining of data on graduates and jobs and do not impose methods of calculation.  FAC ¶ 271 & 273 (citing ACICS Accreditation Criteria § 3-1-441(c)).

Relators also claim that Defendants used high-pressure tactics to enroll students, such as pressuring admissions representatives or students.  FAC at 72-78. The Court in Diaz dismissed these same claims because the allegations failed to demonstrate "a violation of any statute or regulation."  2011 WL 3627285, at *7. The same is true of Relators' allegations that cite no regulations.  See FAC at 72-78.  To be sure, Relators' allegations here, that admissions representatives were terminated when they "failed to enroll a sufficient number of students" (FAC ¶ 232), could have no statutory basis because nothing in the governing regulations precludes adverse employment actions and, in fact, courts have uniformly held that career schools may take action to terminate employees who fail to enroll students.

U.S. ex rel. Bott v. Silicon Valley Colleges, 262 F. App'x 810, 812 (9th Cir. 2008)

("The decision to fire an employee is not covered by the [HEA] because termination is not a prohibited 'commission, bonus, or other incentive payment.'");

U.S. ex rel. Torres v. Kaplan Higher Educ. Corp., 2011 WL 3704707, at *3-4 (S.D. Fla. Aug. 23, 2011) (same effect).

*Allegations of Violation of Incentive Compensation Ban*.   Similarly deficient for failing to show a regulatory violation are Relators' allegations that Defendants have violated the Incentive Compensation Ban, 20 U.S.C. § 1094(a)(20), which states that an educational institution "will not provide any commission, bonus, or other incentive payment based directly or indirectly on success in securing enrollments or financial aid to any persons or entities engaged in any student recruiting or admission activities or in making decisions regarding the award of student financial assistance…" 20 U.S.C. § 1094(a)(20).   FAC ¶¶ 289-305.  As Relators admit (FAC ¶ 290), however, from 2002 through 2010, there were twelve "Safe Harbor" provisions that permitted, among many things, incentive "compensation that is based upon students successfully completing their educational programs, or one academic year of their educational programs, whichever is shorter." 34 C.F.R. § 668.14(b)(22)(ii)(E).   Thus, Relators' allegations that admissions representatives were promised incentive compensation

based on the number of students who *graduated* – was permissible under the Safe Harbor provision and state no claim under the FCA.  FAC ¶¶ 292, 294

    ***Allegations that Unqualified Students Were Admitted.***  Relators' general allegations that Defendants enrolled allegedly unqualified students, FAC ¶¶ 131, 157-70, should be dismissed pursuant to <u>Diaz</u>, which held that such allegations do not "constitute a violation of any statute or regulation."  2011 WL 3627285, at *7.

    Relators have now conceded, by deleting certain paragraphs from the FAC that were alleged in previous complaints, their erroneous claim that Defendants acted improperly by admitting students who allegedly did not pass a Wonderlic test (<u>see</u> TAC at 52-56).  No regulations support that claim and the case law squarely rejects it.  <u>Halasa v. ITT Educ. Servs., Inc.</u>, 2011 WL 4036516, *4 (S.D. Ind. Sept. 12, 2011), <u>aff'd</u>, 690 F.3d 844 (7th Cir. 2012) (holding that defendant's alleged falsification of Wonderlic test results is not actionable under the FCA and noting that the exam "is used by ITT for internal admission purposes only and the scores are not reported to the government or anyone else outside of ITT").  The FAC still contains five (5) references to alleged failings of Wonderlic tests (FAC ¶¶ 19, 121, 158, 299, 316), which are not actionable.

    Relators also allege that Defendants violated the FCA by enrolling students who were learning disabled or could not speak English.  FAC at 50-55.  Of course, Relators fail to cite a single supporting regulation for this charge because the law is

to the contrary.  Defendants are in fact *prohibited* from discriminating against handicapped persons, including persons with psychological disorders, such as mental retardation and learning disabilities, in their admissions decisions under 34 C.F.R. § 104.42(a)-(b) ("Qualified handicapped persons, may not, on the basis of handicap, be denied admission or be subjected to discrimination in admission or recruitment by a [career school to which Federal financial assistance is extended]."); <u>see also</u> 34 C.F.R. § 104.3(j)(1)(i).  Likewise, Defendants are *prohibited* from discriminating against persons based on their national origin and specifically, those with limited English language skills, in their admissions decisions.   45 C.F.R. § 80.3(a)-(b)(1); 45 C.F.R. Pt. 80, App. B(IV)(L) ("Recipients may not restrict an applicant's admission to vocational education programs because the applicant, as a member of a national origin minority with limited English language skills, cannot participate in and benefit from vocational instruction to the same extent as a student whose primary language is English.").

Relators also allege that Defendants violated the FCA by admitting convicted felons, that convicted felons are "not eligible for financial aid" and that "[s]tudents who have been convicted of a drug-related offense are ineligible to receive Federal financial aid…."  FAC ¶¶ 146-47.  Relators wholly misstate the law.  First, there is no regulation barring convicted felons from being admitted or receiving federal financial aid and Relators cite to none.  Second, 34 C.F.R.

§668.40(a)(1), which has been in effect from September 8, 2006 through present time, does not prohibit students with drug-related offenses from obtaining federal financial aid.   The regulation provides only that students are ineligible to receive Title IV, HEA program funds if they have been convicted of a Federal or state crime involving possession or sale of illegal drugs for conduct "*that occurred during a period of enrollment for which the student was receiving title IV, HEA program funds*." 34 C.F.R. §668.40(a)(1) (emphasis added).   Even then, the aid may be restored after a specific period or if a student has been rehabilitated.   34 C.F.R. §668.40(a)-(c).   Relators do not allege Defendants admitted and qualified for Federal financial assistance any students in violation of 34 C.F.R. §668.40(a). Relators concede that Defendants properly instructed admissions representatives "to enroll students with felony convictions, but to direct them into programs (e.g. medical billing) where a criminal record would not automatically preclude employment." FAC ¶ 154.

　　　*Allegations that Defendant Changed Grades and Attendance Records.* Relators also claim that Defendants engaged in misconduct with respect to satisfactory academic progress ("SAP"), alleging that Defendants pressured administrators and instructors to change grades (FAC at 56-59) and that grades were changed from failing to passing (id. at 59-68).   These same claims, however, were made and dismissed in Diaz,  2011 WL 36727285, at *4, because, as is the

case here too, the relators failed to state how the alleged grade inflation violated any federal regulation -- they "have not alleged any violation of a statute or regulation, [and therefore] have not alleged any fraud". Id.

Relators' cite to regulatory authority, but the citations are not supportive of their claims. For example, 34 C.F.R. § 668.34(a)(7) cited by Relators (FAC ¶¶ 180, 188), became effective one month after this action was commenced and years after most of the events and examples cited in the FAC. The prior version of the regulation in effect through July 2011 is entitled "Satisfactory Progress" (not "Satisfactory Academic Progress" as in the revised regulation), has no subsection (a)(7) and it is addressed solely to students who are enrolled in two-year programs. The programs cited by Relators throughout the FAC, however, are less than two years and Defendants, therefore, did not act in violation of its provisions. Diaz, 2011 WL 36727285, at *4.[11]

Relators also allege that Defendants altered attendance records (FAC at 72), but fail to point to any federal regulation that imposes attendance standards. For example, Relators cite 34 C.F.R. § 668.22(b) (FAC ¶ 212) which, on its face, is

---

[11] Relators' reliance upon 34 C.F.R. § 668.32(f) (FAC ¶ 177) is also misplaced. The version of this regulation in effect through July 1, 2011 provides that a student is eligible for financial aid if he or she "[m]aintains satisfactory progress in his or her course of study according to the institution's published standards" in accordance with 34 C.F.R. § 668.34 (which applies only to two year programs unlike those referenced in the FAC) and 34 C.F.R. § 668.16(e) (which allows schools to establish their own standards which the Secretary deems reasonable if they are in accordance with 34 C.F.R. § 668.34).

38

inapplicable because it addresses attendance in connection with the "Treatment of Title IV Funds *when a student withdraws*" – not when students are enrolled as alleged in the FAC.   <u>Id.</u> (emphasis added).   Even pursuant to this regulation, however, the DOE does not impose attendance parameters; it merely refers to attendance standards maintained by the schools themselves.   Relators' reference to industry ACICS Accreditation Criteria Policies, Procedures, and Standards, No. 2-2-503(a) (FAC ¶ 213) is also unhelpful because this policy standard entitled "Termination of Programs," does not address attendance standards at all.   Because Relators fail to cite governing DOE regulations that specify the manner in which schools are required to take attendance, the school's own internal policies, which were applied, cannot be a violation of any federal law and therefore no implied false certification fraud claim can be alleged under the FCA.

## B.   Dismissal is Required of the FCA Claims That Lack a Condition of Payment Predicate.

As demonstrated in Part V.A, *supra*, a prerequisite to an FCA implied false certification claim is an allegation that the defendant violated a particular federal regulation.   But not every violation of a federal regulation can be a basis for an FCA claim.   The Third Circuit made that point clear in <u>Wilkins</u> by expressly limiting the application of the doctrine of implied false certification to only those claims that allege violations of regulations that are a "precondition to payment", *i.e.*, payment of federal funds that are conditioned on compliance with certain

regulations.  659 F.3d at 307; see also Mikes v. Straus, 274 F.3d 687, 697 (2d Cir. 2001) (parties' knowingly false certification of compliance with applicable regulations are a violation of the FCA only when such regulations are a condition of payment).

Relators' newly-minted allegations, recently added to the FAC -- that Defendants' alleged misrepresentations were material or that the government would not have made payment -- are conclusory factual statements or legal conclusions, which do not save the FAC from dismissal.  Iqbal, 556 U.S. at 678-79.  Moreover, while Relators must ultimately demonstrate that "the government would not have paid the claim had it known the provider was not in compliance" with a particular regulation, the first line of inquiry that must be made is whether the regulation itself is one governing program participation rather than payment and this issue is one decided as a matter of law.  U.S. ex rel. Hobbs v. MedQuest Assocs. Inc., 711 F.3d 707, 714 (6th Cir. 2013) (no violation of a regulation which was a condition of payment; the FCA "is not a vehicle to police technical compliance with complex federal regulations").

"Conditions of participation … are enforced through administrative mechanisms, and the ultimate sanction for violation of such conditions is removal from the government program"; while "[c]onditions of payment are those which, if the government knew they were not being followed, might cause it to actually

40

refuse payment." <u>U.S. ex rel. Conner v. Salina Reg'l Health Ctr., Inc.</u>, 543 F.3d 1211, 1220 (10th Cir. 2008). A general certification that a program participant will comply with all applicable regulations and statutes is an insufficient basis upon which an FCA claim can be stated. <u>Id.</u> at 1218-19. As the Third Circuit reiterated in <u>Wilkins</u>, courts will not allow the FCA to be used as "a blunt instrument to enforce compliance with all ... regulations rather than only those regulations that are a precondition to payment." 659 F.3d at 307 (internal citation omitted). Yet that is exactly what Relators seek to do.

Thus, in <u>Wilkins</u>, where the government's payment of Medicare claims was not conditioned on compliance with Medicare marketing regulations, no FCA claim could be stated. 659 F.3d at 308-11. In that case, the defendants violated Medicare marketing regulations by using unapproved flyers, soliciting in clinics' and physicians' waiting rooms, chasing people in supermarkets, giving out prizes at Medicare presentations, pressuring and overwhelming consumers during presentations, etc. <u>Id.</u> at 300-07. The court reviewed the Medicare marketing regulations and determined that while the agency may terminate a participant, it must provide the participant with notice and an opportunity to develop a corrective action plan. <u>Id.</u> at 309. These provisions of agency review of misconduct and application of administrative remedies other than withholding payment, such as allowing corrective actions or terminating participation in the program,

demonstrated that compliance with the marketing regulations was a condition of participation, not a condition of payment.   Id. at 309-311.   By allowing FCA claims that are based upon "participation," courts would be undermining the government's own regulatory and remedial procedures.   Id. at 310.   Because government payment for services rendered were not affected by defendants' failure to abide by marketing regulations, the Third Circuit held it was proper to dismiss the relators' marketing regulation claims of the *qui tam* complaint without leave to replead.   Id. at 310, 314-15.[12]

The Third Circuit pronounced that under an implied false certification theory, instead of looking at defendants' representations to the government, courts must focus their analysis on "the underlying contracts, statutes, or regulations themselves to ascertain whether they make compliance a prerequisite to the government's payment."   Wilkins, 659 F.3d at 313 (quoting Conner, 543 F.3d at 1218); Hobbs, 711 F.3d at 714.   Wilkins delineates several factors to be considered in finding that an alleged violation is merely a condition of participation.   659 F.3d at 310.   For example, conditions of participation can be discerned:

---

[12] In contrast to its holding regarding the marketing regulations, the Wilkins Court noted that a violation of the anti-kickback statute could be prosecuted as a felony, that the court had previously held that a false certification of compliance with an anti-kickback statute constituted an FCA claim, and Parts C and D of Medicare clearly mandate compliance with the anti-kickback statute as a condition of payment. Wilkins, 659 F.3d at 312-14.

1. If the regulation permits the violation to be corrected and permits continued participation (id. at 309);

2. "[T]he Government has established an administrative mechanism for managing and correcting…[regulatory] violations which includes remedies other…than the withholding of payment…" (id. at 310);

3. The "ultimate sanction for violation of such conditions is removal from the government program…" (id. at 309);

4. The regulations are so complex "that the best intentioned plan participant could make errors in attempting to comply with them" (id. at 310); and

5. There are no cited instances in which the government withheld payment based on the alleged violation (id. at 310).

When judged against these factors, it becomes evident that many of Relators' FCA claims relate only to whether the DOE would allow Defendants to continue to participate in the loan programs – i.e., they are not conditions of payment. For example, Relators' claims of alleged misrepresentations include false statements as to accreditation, transfer of credits, and graduation and/or placement statistics (the "Misrepresentation Claims"). Much like the Medicare marketing regulations at issue in Wilkins, which were held to be conditions of participation, the DOE has its own regulations relating to misrepresentations and remedies for their breach. Misrepresentations that the DOE considers to be minor require the DOE to "inform [] the institution and endeavor [] to obtain an informal, voluntary correction," 34 C.F.R. § 668.75(b).[13]

---

[13] Citations to 34 C.F.R. § 668.75 refer to a previous version of the regulation that was effective until July 1, 2011. This regulation has since been amended; but, as

Furthermore, the DOE is granted sole authority to distinguish between minor and substantial misrepresentations.   34 C.F.R. § 668.75(a).   While substantial misrepresentations may result in the termination of participation in a program, DOE regulations do not call for the withholding of payment due career schools.   34 C.F.R. § 668.75(c) (the DOE may fine, limit, suspend or terminate the institution's eligibility to participate in Title IV programs).   The DOE has the expertise and discretion under its own regulations to determine what constitutes compliance.   34 C.F.R. § 668.75(a)-(c).   When the DOE recently amended provisions of its misrepresentation regulations, it explicitly stated that they were not intended to provide "additional avenue[s] for litigation for students, employees and other members of the public. Instead, the regulations specify the conditions under which the department may determine that an institution has engaged in substantial misrepresentation and the enforcement actions that the department may choose to pursue."  75 Fed. Reg. 66915.

Relators' claims principally rely upon a general statement in Defendants' PPAs executed some years ago that Defendants will abide by HEA regulations. Courts have held that such a general certification that a program participant will

---

Relators acknowledge (see, e.g., FAC ¶ 65), only regulations which were in effect at the time of the events of the pleadings are pertinent to this action.  Thus, this brief references versions of CFR regulations which were in effect prior to June 24, 2011, the date of the filing of the original complaint and most of the acts alleged in the FAC.

comply with all applicable regulations and statutes is an insufficient basis upon which an FCA claim can be stated.  Conner, 543 F.3d at 1218-19; Hobbs, 711 F.3d at 714-15.    Defendants' PPAs do not explicitly refer to regulatory misrepresentation provisions and nothing in the PPA or the applicable regulations explicitly preclude the payment of federal funds when misrepresentations are identified.  See PPAs (Howard Cert. Exs. I and J).  For example, the PPA does not explicitly reference 34 C.F.R. § 668.75, addressing accreditation issues.    Id. Sweeping references in a PPA to generalized regulations cannot serve as a basis for an FCA suit where, as here, the regulations are comprised of hundreds and thousands of specific provisions.  See Connor, 543 F.3d at 1218-19; Hobbs, 711 F.3d at 714-15, 717.

Furthermore, the alleged SAP violations are not conditions of payment.  The applicable SAP regulation falls within the regulation relating to "Standards for administrative capability" (34 C.F.R. § 668.16) and the specific SAP regulation provides only that a school must apply "*reasonable standards* for measuring whether an otherwise eligible student is maintaining satisfactory progress in his or her educational program."  34 C.F.R. § 668.16(e) (emphasis added).  Section 668.16(e) thus provides broad guidelines to career schools, but makes clear that the details of a school's SAP policy are for the school itself to determine in light of what it considers most appropriate for the needs of the school and its students.  The

DOE has stated this "administrative capability" regulation was meant only to "provid[e] parameters for institutions to use … while preserving essential institutional discretion in setting their own specific standards."  48 Fed. Reg. 45670, at *45670.  This provision does "not establish a specific single national standard" for SAP.  48 Fed. Reg. 45670, at *45672.  The lack of precise SAP standards contained in § 668.16 is a purposeful one and the DOE has stated that it is intentionally designed in this manner because the "regulations retain the flexibility for an institution to evaluate different categories of students differently," 75 Fed. Reg. 66832, at *66880, and to "allow institutions to have as much flexibility as possible in developing an appropriate SAP policy for their institution. . ."  75 Fed. Reg. 66832, at *66884.

Given the lack of any published standards for SAP in § 668.16(e), it is no surprise that Defendants' PPAs lack any reference to an explicit SAP regulation. Instead, the PPA references only the generalized statement of compliance with administrative capability, 34 C.F.R. § 668.16(e).  PPAs (Howard Cert. Exs. I and J).  Relators' SAP claims must therefore fail for lack of any pleaded regulatory basis or predicate for the government to refuse Defendants' payment.  It is simply not a condition of payment as required by Wilkins, 659 F.3d at 309-10.[14]

---

[14] As stated previously, Relators misstate the applicable statute.  See FAC at ¶¶ 180 and 188.  34 C.F.R. § 668.34 in effect through July 2011 regulated "Satisfactory Programs" for students enrolled in two year programs not at issue here.

Relators' Misrepresentation and SAP Claims invite a deluge upon the Federal Courts, threatening to turn every violation of a regulation into an FCA *qui tam* suit.  Among others, the Third Circuit in <u>Wilkins</u>, the Second Circuit in <u>Mikes</u>, 274 F.3d at 699-700 (relied upon by <u>Wilkins</u>), the Sixth Circuit in <u>Hobbs</u> and the Tenth Circuit in <u>Conner</u> have all refused to expand the limits of FCA liability, predicated upon the implied false certification theory, beyond those regulatory violations which would prompt the government to refuse payment of submitted claims.  These courts have all drawn the line, rejecting FCA cases that present only violations of conditions of participation instead of conditions of payment and, respectfully, this Court should follow the sound reasoning of those courts.  <u>See also</u> <u>U.S. ex rel. Qazi v. Bushwick United Housing Dev. Fund Corp.</u>, 2013 WL 5607181 (E.D.N.Y. Oct. 14, 2013) (dismissing an FCA *qui tam* complaint filed by a day care teacher against her former employer school, which had received federal and state funding, on grounds analogous to <u>Wilkins</u>, <u>Mikes</u> and <u>Conner</u>).[15]

## V.   RELATORS' REVERSE FALSE CERTIFICATION CLAIM (COUNT IV) MUST BE DISMISSED PURSUANT TO RULE 12(b)(6).

Relators assert a "reverse false certification claim" under the FCA, 31 U.S.C. § 3729(a)(1)(G), alleging that Defendants "knowingly avoided or decreased

---

[15] Defendants are heavily regulated by the DOE and there are a myriad of regulations and procedures, including appeal procedures, applicable to Defendants. As such, under the doctrine of primary jurisdiction, this Court is required to refrain from deciding claims that fall within the DOE's primary jurisdiction in this case. <u>See</u> <u>CSX Transp. Co. v. Novolog Bucks Cnty.</u>, 502 F.3d 247, 253 (3d Cir. 2007).

[their] obligation to pay or transmit money to the Government" through false records. FAC Count IV, ¶ 344. There are no factual allegations to support this claim – only legal conclusions that Defendants should have refunded monies to the government that they received. Relators admit that the facts relied upon are as "alleged in detail above" (FAC ¶ 344) – that is, the same allegations that support Relators' claims for Defendants' alleged violations of the FCA in causing the government to pay false claims. See also FAC ¶ 343. These admissions compel dismissal of Count IV as a matter of law pursuant to Rule 12(b)(6).

"Reverse false certification" claims predicated upon 31 U.S.C. § 3729(a)(1)(G) and alleging fraudulent efforts to reduce a liability owed to the government, have been unceremoniously dismissed in FCA *qui tam* cases, and particularly, in career school cases on the grounds that they are impermissibly redundant of the relators' FCA claim for false payments asserted under other provisions of 31 U.S.C. § 3729. Sobek, 2013 WL 2404082 at *29. Where, as here, a reverse false certification claim is simply the flipside of the claims made in the *qui tam* complaint asserting the tendering of false claims for payment and receipt of payment, the reverse false certification claims must be dismissed. Id.; U.S. ex rel. Thomas v. Siemens AG, 708 F. Supp. 2d 505, 514-15 (E.D. Pa. 2010) (redundant reverse false certification claim dismissed).

Further, even after amending their complaint yet again, Relators allege nothing in the PPA, statutes or regulations that obligated Defendants to repay monies to the government under the alleged facts and circumstances. As such, Count IV must be dismissed pursuant to Rule 12(b)(6). <u>Sobek</u>, 2013 WL 2404082, at \*29.

## VI.   RELATORS' FCA CONSPIRACY CLAIM (COUNT III) MUST BE DISMISSED PURSUANT TO RULES 9(b) AND 12(b)(6).

Relators assert a cause of action for conspiracy under the FCA, consisting of only legal conclusions, which are unsupported by any of the factual allegations in the FAC. <u>See</u> FAC Count III, ¶¶ 340-42. Relators' FCA conspiracy claim must be dismissed because Relators have not made out the *prima facie* elements of the claim (most importantly, a fraudulent agreement amongst conspirators), the intracorporate conspiracy doctrine mandates dismissal of the claim, and the Relators have not pleaded the conspiracy claim with the requisite particularity.

When alleging an FCA conspiracy claim, "a plaintiff must plead '(1) that the defendant conspired with one or more persons to get a false or fraudulent claim allowed or paid by the United States; (2) that one or more of the conspirators performed any act to effect the object of the conspiracy; and (3) that the United States suffered damages as a result of the false or fraudulent claim.'" <u>Piacentile</u> 2010 WL 5466043, at \*9 (citation omitted). There are no factual allegations to support any of these elements.

49

647440-6

The Relators have, quite simply, not even attempted to allege the existence of a conspiracy. "The essence of a conspiracy under the Act is an agreement between two or more persons to commit fraud." <u>U.S. ex rel. Lampkin v. Johnson & Johnson, Inc.</u>, 2013 WL 2404238, at *6 (D.N.J. May 31, 2013) (quoting <u>Piacentile</u>, 2010 WL 5466043, at *9). Because Relators have failed to allege the existence of *any* agreement, let alone a conspiratorial agreement, their FCA conspiracy claim must be dismissed. Additionally, Relators have also failed to allege the other two required elements of an FCA conspiracy claim: an overt act by anyone in furtherance of a conspiracy and damages to the United States. <u>Piacentile</u> 2010 WL 5466043, at *9. The Relators' FCA conspiracy claim must, therefore, be dismissed for failing to state a claim, pursuant to Rule 12(b)(6).

Moreover, the intracorporate conspiracy doctrine mandates dismissal of Relators' FCA conspiracy claim. Relators have alleged that Defendant, its schools and employees have engaged in a fraudulent scheme. However, the intracorporate conspiracy doctrine warrants dismissal because a corporation is legally incapable of conspiring with its wholly owned subsidiaries[16] or employees[17].

---

[16] <u>Lampkin</u>, 2013 WL 2404238, at *6 ("the law deems a parent corporation and its subsidiaries 'legally incapable of forming a conspiracy with one another'").

[17] <u>United States v. Warnings</u>, 1994 WL 396432, at *4 (E.D. Pa. July 26, 1994) ("It is well-established that a corporation cannot conspire with its own officers while the officers are acting in their official capacity.").

Finally, Relators' allegations regarding an FCA conspiracy, carried out by "John Does," (FAC ¶¶ 52-54), must be dismissed pursuant to Rule 9(b) because Relators have not alleged any of the details regarding a conspiracy, particularly, the identities of conspirators, when the agreements to defraud took place and what was agreed upon.  Piacentile, 2010 WL 5466043, at *9 ("As with all claims under the FCA, conspiracies … must be pleaded with particularity.") (internal citations omitted).  Accordingly, the Court must dismiss Relators' FCA conspiracy claim for failing to state a claim upon which relief may be granted in violation of Rule 12(b)(6) or because the claim is not pleaded with the requisite particularity in violation of Rule 9(b).

## VII.   RELATORS' FCA RETALIATION CLAIMS (COUNTS V AND VII) MUST BE DISMISSED PURSUANT TO RULES 9(b) AND 12(b)(6).

Relators Amaya and Moody have asserted claims that they were terminated, or constructively discharged, in retaliation for their "whistleblowing activities," in violation of 31 U.S.C. § 3730(h).  The Third Circuit has stated that "a prima facie case of retaliation under § 3730 requires proof that the plaintiff (1) engaged in 'protected conduct,' (*i.e*., acts done in furtherance of an action under § 3730) and (2) that the plaintiff's employer discriminated him because of his 'protected conduct.'"  Hutchins v. Wilentz, Goldman & Spitzer, 253 F.3d 176, 189 n.9 (3d Cir. 2001).  To prove the second element of a § 3730(h) claim, "a plaintiff must show that (1) his employer had knowledge that he was engaged in 'protected

51

conduct'; and (2) that his employer's retaliation was motivated, at least in part, by the plaintiff's engaging in 'protected conduct.'" Id. Relators Amaya and Moody, however, were not engaged in protected conduct under the statute, nor have they properly alleged that they were discriminated against because of such conduct. Their claims must therefore be dismissed.

Relators Amaya and Moody have formulaically asserted that they were terminated as a result of "whistleblowing activities." FAC ¶¶ 32-33, 39, 319, 323, 326, 328. Contrary to Relators' assertions, neither Relator Amaya's purported January 12, 2011 letter to PEG Vice President Nicholas Hastain (FAC ¶ 322) nor Relator Moody's alleged reporting to Mr. Hastain "that two executives at HSB-Wilmington … had directed her to change grades without instructor authorization" (id. ¶ 327) constitute "protected conduct." Construed extremely liberally, these paragraphs merely describe two employees who are investigating their "employer's non-compliance with federal or state regulations," which the Third Circuit has held is not protected conduct. Hutchins, 253 F.3d at 187-88.

Rather, an employee's conduct must put the employer "on notice of the 'distinct possibility' of False Claims Act litigation" to become protected conduct under the FCA. Id. at 191; see also Campion v. Ne. Util., 598 F. Supp. 2d 638, 658 (M.D. Pa. 2009). Where, as here, Relators make no allegation that they informed supervisors that the misconduct complained of was causing government funds to

be lost, or gave "any indication that [they] may ultimately initiate an FCA action" or report PEG's activities to the government, their activities cannot be considered protected conduct and their FCA retaliation claims must be dismissed.  <u>Campion</u>, 598 F. Supp. 2d at 658.

Additionally, Relators' conduct cannot be considered protected because they were merely fulfilling their responsibilities as Director of Education at HSB-Wilmington (FAC ¶ 32) and Registrar at HSB-Wilmington (FAC ¶ 38).  This fact creates a presumption that their activity was not protected conduct at all.  <u>Yuhasz v. Brush Wellman, Inc.</u>, 341 F.3d 559, 566-69 (6th Cir. 2003) (retaliation claim dismissed where court found relator was "simply performing his ordinary duties").

## VIII. THE CLAIMS OF RELATORS AMAYA AND MOODY FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS (COUNTS VI AND VIII) FAIL TO STATE A CLAIM FOR WHICH RELIEF MAY BE GRANTED.

Relator Amaya's and Moody's state law claims of intentional infliction of emotional distress, presumably pursuant to Delaware law, must be dismissed for, at least, two reasons: first, they are barred by the Delaware Workers' Compensation Statute, <u>Avecia Inc.</u>, 2003 WL 22432911, at *4-5; second, they do not allege that Defendants' behavior was "so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community," <u>Jordan v. Delaware</u>, 433 F. Supp. 2d 433, 444 (D. Del. 2006) (quoting <u>Mattern v. Hudson</u>, 532 A.2d 85, 86 (Del. Super. 1987)).

The Workers' Compensation Statute, Del. Code Ann. tit. 19, § 2304 (West), provides the sole remedy for all workplace injuries.  As Relators allege no basis for pleading that Defendants' employees engaged in "willful conduct [against Relators] … for personal reasons not related to the scope of employment," their claims are preempted by the statute.  <u>Avecia Inc.</u>, 2003 WL 22432911, at *4-5 (citation omitted).

Relators Amaya and Moody have simply taken the pertinent language of the intentional infliction of emotional distress cause of action, and the rare exception for the Worker's Compensation Statute, and inserted the language into their counts without providing any factual support.  <u>See</u> FAC ¶¶ 353-356, 362-365.   As evidence of the hasty and poorly considered manner in which Relators have attempted to save their wholly frivolous state-law tort claims, Count VIII concerning Relator **Moody**, references Defendant's "deliberate intent to bring about an injury to Relator **Amaya**." <u>Id.</u> at 363 (emphasis added).

Relators Amaya and Moody conclude they suffered "severe emotional distress" without alleging one aspect of that "severe emotional distress."  Nor have Relators Amaya and Moody identified which of Defendants' conduct they consider to be so "extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." <u>Jordan</u>,

54

433 F. Supp. 2d at 444.  This is an insufficient and fatally deficient pleading.  U.S.

ex rel. Lobel v. Express Scripts, Inc., 351 F. App'x 778, 780 (3d Cir. 2009).

## CONCLUSION

For all of the foregoing reasons, Defendants respectfully request that their

motion to dismiss the Fourth Amended Complaint be granted in all respects.

Dated:    Mineola, New York
          March 26, 2014

                          Respectfully submitted,

                          MELTZER, LIPPE, GOLDSTEIN
                           & BREITSTONE, LLP


                          By:  /s Richard M. Howard, Esq.
                               Richard M. Howard, Esq.
                               Norman R. Cerullo, Esq.
                               Loretta M. Gastwirth, Esq.
                               Peter A. Laserna, Esq.
                               190 Willis Avenue
                               Mineola, New York 11501
                               (516) 747-0300
                               *Attorneys for Defendants*

647440-6