(Doc. Nos. 115, 119, 129, 131, 134, 165, 166)

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
## CAMDEN VICINAGE

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, ex rel. LAPORTE, et al., | : : : | |
| Relators, | : : | Civil. No. 11-3523 (RBK/AMD) |
| v. | : : | **OPINION** |
| PREMIERE EDUCATION GROUP, L.P., et al., | : : : | |
| Defendants. | : : | |

**KUGLER**, United State District Judge:

This matter comes before the Court upon its June 16, 2016 Order directing the parties to file briefs addressing the impact of *Universal Health Services, Inc. v. United States ex rel. Escobar*, 136 S. Ct. 1989 (2016), on its previous decision regarding Defendants' motion to dismiss. (Doc. No. 119). For the following reasons, the Court finds that its May 11, 2016 Opinion and Order granting in part and denying in part Defendants' motion to dismiss the Fourth Amended Complaint does not require further reconsideration due to intervening changes in the law. Defendants' motion for certification for interlocutory appeal (Doc. No. 115) is **DENIED**.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

The Court need not recite the facts of this case, as they have been laid out in great detail in this Court's previous opinion addressing Defendants' motion to dismiss the Fourth Amended Complaint. *See* May 11, 2016 Opinion at 1-8 (Doc. No. 111). The Court previously dismissed a number of counts, but found that Plaintiff's stated False Claims Act claims under the "implied

1

certification theory" for Defendants' allegedly misleading career placement performance numbers, violations of the Incentive Compensation Ban related to providing bonuses based on enrollments, and altering students' grades and attendance records. *Id.* at 26-35. Defendants filed a Motion for Certificate of Appealability on May 23, 2016, asking this Court to certify a question to the Third Circuit asking "[w]hether [Program Participation Agreements] and [Higher Education Act] Title IV statutes and regulations are conditions of participation rather than conditions of payment such that the [False Claims Act] Remaining claims asserted by Plaintiffs should have been dismissed?" Defs.' Mot. Br. for Interlocutory Appeal at 5 (Doc. No. 115-11). This Court denied Defendants' request on June 16, 2016, finding that certification would not materially advance the outcome of the litigation, nor would certification be appropriate in light of the (then) recent decision in *Universal Health Services, Inc. v. United States ex rel. Escobar*. June 16, 2016 Order. The parties have submitted substantial briefing and supplemental briefing regarding *Escobar* and subsequent Circuit decisions.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) allows a court to dismiss an action for failure to state a claim upon which relief can be granted. When evaluating a motion to dismiss, "courts accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (quoting *Phillips*, 515 F.3d at 233). In other words, a complaint is sufficient if it contains enough factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). It is not for courts to decide at this point whether the moving party will succeed on the merits, but

"whether they should be afforded an opportunity to offer evidence in support of their claims." *In re Rockefeller Ctr. Props., Inc.*, 311 F.3d 198, 215 (3d Cir. 2002). Yet, while "detailed factual allegations" are unnecessary, a "plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (alteration in original) (citations omitted).

To make this determination, a court conducts a three-part analysis. *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010). First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." *Id.* (quoting *Iqbal*, 556 U.S. at 675). Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* (quoting *Iqbal*, 556 U.S. at 680). Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." *Id.* (quoting *Iqbal*, 556 U.S. at 680). This plausibility determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. A complaint cannot survive where a court can infer only that a claim is merely possible rather than plausible. *Id.*

## III. DISCUSSION

A claim under the False Claims Act requires a showing of four elements: falsity, causation, knowledge, and materiality. *United States ex rel. Petratos v. Genentech Inc.*, 855 F.3d 481, 487 (3d Cir. 2017). Defendants claim that the Fourth Amended Complaint fails to adequately allege both misrepresentation and materiality. Defs.' Br. at 3-10 (Doc. No. 125).

The Supreme Court in *Escobar* held that "the False Claims Act encompasses claims that make fraudulent misrepresentations, which include certain misleading omissions." *Escobar*, 136

S. Ct. at 1999. "When . . . a defendant makes representations in submitting a claim but omits its violations of statutory, regulatory, or contractual requirements, those omissions can be a basis for liability if they render the defendant's representations misleading with respect to the goods or services provided." *Id.* At issue in *Escobar* was whether the Defendant's payment claims were more than mere requests for payments that actually constituted misleading half-truths. Defendant submitted reimbursement claims to Medicaid that used payment codes which were linked to specific services that patients allegedly received. *Id.* at 1997. In some instances, the services that the defendant claimed to provide were not rendered by an employee with the appropriate credentials or licenses. *Id.* The Supreme Court held that "[b]y using payment and other codes that conveyed [employee qualifications] without disclosing Arbour's many violations of basic staff and licensing requirements for mental health facilities, Universal Health's claims constituted misrepresentations." *Id.* at 2000-01.

Defendants claim that the Fourth Amended Complaint fails the first half of the "strict" two-prong test laid out in *Escobar*.[1] Defs.' Br. at 2-3. Defendants claim that, unlike the Defendant in *Escobar*, "Premier's alleged submission of claims contained no specific representation about any services and therefore, no misleading half-truths." Defs.' Br. at 3. The Court disagrees.

The Court finds that the United States District Court for the Northern District of California's opinion in *Rose v. Stephens Institute* is particularly relevant to the instant case. 2016 WL 5076214 (N.D. Cal. Sep. 20, 2016). *Rose* is similar to the instant case; the Relators in *Rose*

_____

1. Plaintiffs refute Defendants' contention that *Escobar* creates a strict test. Rather, they assert that the Supreme Court merely held that an FCA claim *can* be stated under section 3729(a)(1)(A) "at least" where the two factors are plead, rather than *only* when those factors are plead. Pl.'s Br. at 2 (Doc. No. 126).

alleged that the defendant institution had submitted fraudulent claims for payment because the institution had violated Title IV's incentive compensation ban ("ICB"). *Id.* at *1. Defendant filed a motion for reconsideration addressing the impact of *Escobar* on the Northern District of California's earlier order. *Id.* at 3. The *Rose* court found that the request for payment at issue "represent[ed] that the student-borrower is 'eligible' and is enrolled in an 'eligible program.' If [the institution] was not in compliance with the ICB, failure to disclosure (sic) this fact would render the loan forms misleading because [the institution] would not have been an 'eligible institution.'" *Id.* at 5.

This Court has previously noted that Defendants' initial and continued eligibility for participation in Title IV programs, and by extension, the receipt of Title IV HEA funding was conditioned on compliance with the terms of the Program Participation Agreement ("PPA") and the federal regulations therein. May 11, 2016 Op. at 36. This Court has also previously found that Relators have adequately alleged that Defendants violated the following regulations: 34 C.F.R. section 668.74 (which prohibits "misrepresentations regarding the employability of an eligible institution's graduates); 34 C.F.R. section 668.14(22)(i) (which prohibits incentive payments based directly or indirectly upon success in securing enrollments); 34 C.F.R. section 668.16(e) (which requires a school to apply reasonable standards to evaluate students' progress); and 34 C.F.R. section 668.22(b) (which requires institutions to take attendance if required by an outside agency). May 11, 2016 Op. at 28, 31-35. Compliance with these regulations was a condition for Defendants' continued Title IV eligibility. Relators have alleged that Defendants were violating these regulations, which would mean that Defendants were not eligible to receive Title IV funds. Therefore, Relators have alleged that Defendants' requests for payment were misleading because they represented that Defendants were eligible to receive Title IV funds

when they were ineligible. Accordingly, the Court finds that Relators have sufficiently alleged that Defendants' requests for payment made "specific representations about the goods and services provided" which constituted misleading half-truths. *See Escobar*, 136 S. Ct. at 2001.

The *Escobar* Court also explained how courts should view the materiality requirement. "It explained that a misrepresentation is not material 'merely because the Government designates compliance with a particular statutory, regulatory, or contractual requirement as a condition of payment . . . [or because] the Government would have the option to decline to pay if it knew of the defendant's noncompliance.'" *Petratos*, 855 F.3d at 489 (quoting *Escobar*, 136 S. Ct. at 2003). Defendants argue that Relators have also failed to adequately allege that the United States would have refused payment had it known of PEG's regulatory violations. Defs.' Br. at 6-10.

This Court already addressed the sufficiency of the Fourth Amended Complaint with regard to allegations that the United States would have refused payment. *See* May 11, 2016 Op. at 36-37. The Court does not find it necessary to rehash this analysis in light of *Escobar*. This Court previously found that "Relators have plead with sufficient particularity that the United States would have refused payment had it known of PEG's regulatory violations. Defendants are welcome to defeat liability at the motion for summary judgment stage, if it can be shown that United States would not have refused payment." *Id.* at 36 (citation omitted). The Court renews its invitation to Defendants to show that the United States would not have refused payment.

## IV. CONCLUSION

For the foregoing reasons, the Court finds that that its May 11, 2016 Opinion and Order granting in part and denying in part Defendants' motion to dismiss the Fourth Amended Complaint does not require further reconsideration in light of *Universal Health Services, Inc. v.*

*United States ex rel. Escobar*. Defendants' motion for certification for interlocutory appeal is

**DENIED**.


Date: 08/11/2017                                           s/ Robert B. Kugler
                                                           ROBERT B. KUGLER
                                                           United States District Judge